*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0033p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CAROLE PAHSSEN, Next Friend of JANE DOE,
a minor,

                *Plaintiff-Appellant,*

    *v.*

MERRILL COMMUNITY SCHOOL DISTRICT;
BRECKENRIDGE COMMUNITY SCHOOLS; JEFF
JENNETTE; SHEILA PILMORE; SALLY
MACLENNAN,

                *Defendants-Appellees.*

No. 10-1028

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 08-11539—Thomas L. Ludington, District Judge.

Argued: October 13, 2011

Decided and Filed: February 3, 2012

Before: ROGERS, COOK, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Victor Joseph Mastromarco, Jr., THE MASTROMARCO FIRM, Saginaw,
Michigan, for Appellant. Roy H. Henley, THRUN LAW FIRM, P.C., East Lansing,
Michigan, Gregory W. Mair, O'NEILL, WALLACE & DOYLE, Saginaw, Michigan,
for Appellees. Lisa J. Stark, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Amicus Curiae. **ON BRIEF:** Manda L. Westervelt, THE
MASTROMARCO FIRM, Saginaw, Michigan, for Appellant. Roy H. Henley, THRUN
LAW FIRM, P.C., East Lansing, Michigan, Gregory W. Mair, O'NEILL, WALLACE
& DOYLE, Saginaw, Michigan, John A. Chasnis, CHASNIS, DOGGER & GRIERSON,
Saginaw, Michigan, for Appellees. Lisa J. Stark, Mark L. Gross, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.

———————————

## OPINION

———————————

COOK, Circuit Judge. Plaintiff-Appellant Carole Pahssen ("Appellant"), as next friend and mother of Jane Doe, sued defendants Breckenridge Community Schools ("Breckenridge"), Breckenridge Superintendent Jeff Jennette ("Superintendent Jennette"), Breckenridge Middle School Principal Sheila Pilmore ("Principal Pilmore") (collectively "the Breckenridge Defendants"), Merrill Community School District ("Merrill"), and Sally MacLennan for relief on claims stemming from sexual harassment and assault that Jane Doe allegedly experienced while attending Merrill. In her amended complaint, Appellant alleged violations of Title IX of the Education Amendments of 1972 ("Title IX") against Merrill and Breckenridge, violations of 42 U.S.C. § 1983 against Merrill and the Breckenridge Defendants, and violations of 42 U.S.C. § 1985 against MacLennan and the Breckenridge Defendants. The district court granted summary judgment to the defendants on all claims. We affirm.

I.

During the fall of 2007, Jane Doe and John Doe[1] were students in Merrill Middle School and Merrill High School, respectively. The two schools' classrooms occupy different wings of the same building in Saginaw County, Michigan. At the beginning of the 2007–2008 school year, John was a ninth grade, Individualized Education Program ("IEP"), special education student. At this time, Jane was in eighth grade and believed that she was John's girlfriend.

Appellant alleges that John sexually harassed Jane on three separate occasions during the first few weeks of the semester. In the first incident, John shoved Jane into a locker. In her deposition, Jane testified that she believed John did this because he saw her talking to another boy and "got jealous." Megan McMahan, Jane's science teacher

———————————

[1]Under a protective order issued by the district court, the minors' names were stricken from the record.

and basketball coach, witnessed this incident. In the second incident, John allegedly told Jane that "if she wanted to hang out with him anymore, she would have to" perform oral sex on him.

Last, Appellant asserts that John made "obscene sexual gestures" toward Jane during a school basketball game in which Jane was playing, in plain view of a crowd that included students, teachers, and school administrators. After the game, Jane's stepfather Russ Pahssen approached John to warn him to stay away from Jane; John responded by assuming an aggressive posture and using profane language toward Mr. Pahssen. Parents and school staff then stepped in and defused the situation.

After the basketball game, Mr. Pahssen wrote a letter to Merrill administrators describing the game's events and informing them of John's request for oral sex. The letter also mentioned that when Mr. Pahssen asked Jane about John's gestures during the basketball game, "she just replied that he was a teenage boy and that [Mr. Pahssen] wouldn't understand." Mr. Pahssen's letter concluded with a warning: "I believe [John] is a volcano waiting to erupt and when he does someone will be hurt, student or staff."

In response, Merrill convened an IEP team on September 27, 2007. Merrill Middle School Principal Christine Garno ("Principal Garno") and McMahan, among others, attended the meeting. The IEP team created a plan requiring John to be under constant adult supervision while he was at school for the next 30 days. The plan specified that the team would reconvene to review the plan and discuss possible adjustments "[a]s needed." Appellant does not allege that John committed any acts of sexual harassment during this 30-day period or the seven weeks after the supervision period expired.

On December 20, 2007, shortly after school had ended for the day, John sexually assaulted Jane on Merrill school grounds. On January 16, 2008, Merrill Superintendent John Searles, citing the assault, recommended that Merrill expel John. The Merrill School Board approved the expulsion at a meeting on January 30, 2008.

While these were the only incidents cited by Appellant that involve Jane, John had a lengthy history of disciplinary problems, including several allegations of sexual harassment and assault, prior to his contact with Jane. John attended Merrill Middle School during the first few months of the 2004–2005 school year, Breckenridge Middle School from February 2005 until the end of the 2005–2006 school year, and Merrill Middle School again starting in August 2006. During his time at Merrill in 2004–2005, John was in trouble so often that then-Merrill Middle School Principal Michael Thayer said "there were few school days where [John] did not receive some type of disciplinary measures." Appellant does not, however, allege that John committed any acts of sexual harassment during this time.

John's behavior problems continued after he transferred to Breckenridge in February 2005. Principal Pilmore wrote to the Breckenridge Police Department on May 5, 2006, describing a number of infractions involving sexual harassment by John. When John left Breckenridge in May 2006, he was on suspension "pending board action." A letter from Breckenridge Schools Superintendent Jeff Jennette to MacLennan, dated May 2, 2006, reads:

> This is a letter to inform you that Breckenridge Schools will not require your son, [John], to attend Breckenridge Schools in the future. You are free to entertain other educational opportunities for [John], and I wish you and him the best of luck in finding a program that is right for him. The administration has been notified of this, and upon receiving that "records request" from his new district, his records will be sent to his new district with only the information that the new district requires.

Citing this letter and portions of Superintendent Jennette's deposition testimony, Appellant asserts that Breckenridge agreed not to expel John and to "purge" disciplinary records from his file in exchange for MacLennan's withdrawing him from the district.

In August 2006, John re-enrolled at Merrill. In October 2006, after an incident where John attacked a group of students who were calling him "rapist," then-Middle School Principal Gary Smith wrote MacLennan to inform her that John was suspended for the remainder of the semester. The letter stated:

> [B]efore [John] can return to Merrill Community Schools as a student, there must be in writing documents that establish . . . progress has been made . . . in addressing his oppositional behaviors with adults and peers, his lack of respecting the rights of other students and staff members, anger management, and self-control issues.

John did not return to Merrill Middle School for the remainder of the 2006–2007 school year. Appellant also notes that police arrested John twice for acts of sexual assault while he was enrolled at Merrill and Breckenridge. The record does not suggest, however, that either arrest led to a conviction or juvenile adjudication. Merrill allowed John to re-enroll at Merrill High School as a ninth grader at the beginning of the 2007–2008 school year. It was during this period of his re-enrollment that the incidents involving Jane Doe occurred.

On April 10, 2008, Plaintiff-Appellant filed a complaint against Merrill and various Merrill administrators and officials, alleging violations of Title IX and 42 U.S.C. § 1983. The Merrill defendants moved the district court to dismiss the complaint or, in the alternative, grant summary judgment. The district court granted the motion in part and denied it in part, dismissing all claims against the individual defendants and the § 1983 claims against all parties, but denying the motion with respect to the Title IX claim against Merrill itself. The court then granted Appellant leave to file an amended complaint joining the Breckenridge Defendants and MacLennan. Appellant's amended complaint alleged violations of Title IX against Merrill and Breckenridge, § 1983 against Merrill and the Breckenridge Defendants, and § 1985 against the Breckenridge Defendants and MacLennan. Merrill then renewed its motion for summary judgment, and MacLennan and the Breckenridge Defendants filed motions to dismiss or, in the alternative, for summary judgment. The district court granted summary judgment in favor of the defendants on all counts. This appeal followed.

II.

In her opening brief, Appellant argues that the district court erred in denying her Title IX claim against Merrill, her Title IX claim against Breckenridge, and her § 1985 claim against MacLennan and the Breckenridge Defendants. With respect to her § 1983

claims, Appellant's opening brief simply states that the district court erred in dismissing her "§ 1983 claim," without referring to any specific parties or counts of her amended complaint. On July 23, 2010, the United States, through the Department of Justice Civil Rights Division (hereinafter, "the government"), filed an *amicus curiae* brief in support of Appellant. The government's brief urges this Court to reverse the district court's denial of the Title IX claim against Merrill, but does not address any of Appellant's other claims.

We review a district court's grant of summary judgment de novo. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must draw all reasonable inferences from the record in the light most favorable to the nonmoving party, and the court may only grant summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citation omitted). Appellate courts reviewing summary judgment may affirm on any grounds supported by the record. *E.g.*, *Babcock & Wilcox Co. v. Arkwright-Boston Mfg. Mut. Ins. Co.*, 53 F.3d 762, 767 (6th Cir. 1995).

## A.

In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court held that "in certain limited circumstances," peer-to-peer sexual harassment supports a Title IX civil damages claim against a funding recipient. *Id.* at 643. The school district is only liable for its own misconduct, since Title IX requires that "[t]he recipient itself . . . 'exclude persons from participation in . . . deny persons the benefits of, or . . . subject persons to discrimination under' its 'programs or activities.'" *Id.* at 640-41 (alterations omitted). *Davis* limits liability "to cases having a systemic effect on educational programs or activities." *Id.* at 653. The *Davis* opinion established three *prima facie* elements for a Title IX claim based on student-to-student harassment:

(1) the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school,

(2) the funding recipient had actual knowledge of the sexual harassment, and

(3) the funding recipient was deliberately indifferent to the harassment.

*Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) (summarizing *Davis*'s holding). The deliberate indifference standard requires that the harassment "take place in a context subject to the school district's control" in circumstances "wherein the [school district] exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis*, 526 U.S. at 645. The Court further cautioned that "courts should refrain from second-guessing the disciplinary decisions made by school administrators" and that victims of peer harassment do not "have a Title IX right to make particular remedial demands." *Id.* at 648.

Appellant asserts Title IX claims against both Merrill and Breckenridge.

1.

In support of her claim against Merrill, Appellant's opening brief refers to three incidents prior to the sexual assault where John Doe allegedly harassed Jane Doe: the locker incident, the request for oral sex, and the gestures at the basketball game. The district court correctly found that these three incidents, taken together, "do[] not rise to the level of 'severe, pervasive, and objectively offensive' conduct." While disturbing, Appellant does not explain how the incidents deprived Jane of access to Merrill's educational resources, opportunities, or benefits. These three pre-December 2007 incidents thus fail to satisfy the first prong of the *Davis* test.

Appellant also urges the court to consider incidents involving third-party victims in its analysis of whether Jane experienced severe, pervasive, and objectively offensive harassment. Appellant states that she relies on her statement of facts to support her claim that "the School District should have been on notice that [John] presented a sexual threat to *female students*, including Jane Doe." The facts section of Appellant's brief

includes a number of incidents involving victims other than Jane, including many incidents that took place off school grounds. Citing an unpublished district court opinion, Appellant argues that previous acts of sexual harassment need not be directed at the Plaintiff to satisfy the first *Davis* requirement.

Appellant cannot, however, premise the first element of her Title IX claim on conduct directed at third parties. Both the plain language of Title IX and controlling case law demonstrate that an individual plaintiff generally cannot use incidents involving third-party victims to show severe and pervasive harassment. Title IX protects students from being "excluded from participation in" or "denied the benefits of" the accused school. 20 U.S.C. § 1681(a) (2006). *Davis* established such denial of access as the sole basis for Title IX student-to-student harassment claims. *Davis*, 526 U.S. at 650. While physical deprivation of access to school resources is not required, *Davis* emphasized that the victims must be "effectively denied equal access to an institution's resources and opportunities" in order to bring a Title IX damages claim. *Id.* at 651.

It follows that a plaintiff bringing a Title IX suit as an individual and not as a member of a class cannot meet the *Davis* requirements unless she can show how the accused school "deprive[d] *the plaintiff* of access to the educational opportunities or benefits provided by the school." *Soper*, 195 F.3d at 854 (citing *Davis*, 119 S.Ct. at 1666-71) (emphasis added). Incidents involving third-party victims lack relevance unless the plaintiff can show that the incidents deprived *her* of such access. This accords with the general principle that plaintiffs must assert their own legal rights and interests, and cannot rest a claim to relief on the rights or interests of third parties. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Here, Appellant appears as an individual. She does not explain how the incidents involving other students or incidents that occurred off Merrill grounds denied Jane access to Merrill's educational opportunities or benefits. Appellant cannot rely on those incidents to meet the first *Davis* prong.

Both Appellant and the government hedge on whether we should consider the sexual assault itself under the first *Davis* element. Facing the same ambiguity, the

district court concisely explained why, regardless of whether the assault is considered, Appellant's Title IX arguments against Merrill fail:

> [T]he above analysis does not include consideration of the rape. It is somewhat problematic that, despite multiple opportunities to address the issue, neither Plaintiff nor Merrill has provided legal authority relevant to whether the rape should be considered. Ultimately, however, the Court need not decide the issue, because Plaintiff's Title IX claim cannot survive under either circumstance. As discussed above, if the rape is not considered, Plaintiff cannot prove that she was subjected to "severe, pervasive, and objectively offensive" sexual harassment.
>
> On the other hand, even if the rape is considered as part of the analysis, and Plaintiff can prove that element, she cannot prove that Merrill's response to the sexual harassment was "deliberately indifferent." Considering all of John Doe's incidents of misbehavior of which Merrill may have been aware and should have informed Merrill of John Doe's apparent propensity to engage in sexual harassment, Plaintiff cannot prove that Merrill's various responses were deliberately indifferent. Indeed, Plaintiff effectively conceded that Merrill's response to the rape was not deliberately indifferent. While John Doe may have engaged in more serious misconduct outside of Merrill, Merrill only had authority to impose discipline for the locker incident, the comments regarding a sexual act, and the sexual gestures at the basketball game. To this end, Merrill imposed a supervision plan, and while the plan was in effect, no further incidents occurred. Although further harm later occurred to Plaintiff, until that point, Merrill did not have "actual knowledge that its efforts to remediate are ineffective." *Vance*, 231 F.3d at 261. In other words, it cannot be said that Merrill's "own deliberate indifference effectively 'cause[d] the discrimination.'" *Davis*, 526 U.S. at 643.

We agree. Even if we consider sexual assault itself under the first part of the *Davis* test, Appellant's Title IX claim would fail because Merrill's response to the assault was prompt, reasonable, and not deliberately indifferent.

In arguing that Merrill displayed deliberate indifference, Appellant asserts that "Defendants have made admissions that the plan was clearly inadequate under the circumstances." The only alleged "admission" cited, however, is a second-hand account of a statement by Principal Garno from Appellant's deposition. According to Appellant, Principal Garno told her at some point during the supervision period: "I'd have to see

him to be able to say if he's been supervised or not. I'd have to see him being alone in the halls. I'd have to see him being there. I can't supervise somebody I don't see." This statement at most indicates Garno's awareness that she could not personally ascertain John Doe's whereabouts at all times during the school day. The IEP, however, was a collaborative effort that required John to be under *adult* supervision while at school, not under the personal supervision of Principal Garno. The alleged statement does not constitute an admission of inadequacy.

Both Appellant and the government also suggest that Merrill's failure to reconvene the IEP team and extend the adult supervision period evinces deliberate indifference. But *Davis* emphasizes that victims of peer harassment cannot make particular remedial demands under Title IX and that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648. Given the limited resources of schools and the demands placed on their faculty, constant supervision of a particular student is precisely the type of disciplinary decision that falls within the discretion of local school officials. Here, the IEP did not require the team to reconvene upon the plan's expiration, nor do the plaintiff or government allege that any incidents occurred during the 30-day supervision period indicating a need for continued supervision. Merrill's failure to impose constant supervision on John Doe after the 30-day period does not, therefore, demonstrate deliberate indifference.

Appellant further argues that Merrill acted with deliberate indifference in its response to the sexual assault because the school district failed to include information regarding the sexual assault in John Doe's student file after receiving a records request from Midland Public Schools in February 2008. The record does not, however, support an inference that Merrill withheld this information knowingly or deliberately; on the contrary, the deposition testimony that Appellant cites indicates that the omission was a clerical oversight. Indeed, even Appellant suggests only that the omission was "part of the pattern of indifference" and "underscores that [Merrill's] response to the rape was clearly inadequate." Negligence, however, does not establish deliberate indifference.

*See, e.g.*, *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011) (citing *Davis*, 526 U.S. at 642, 648).  Moreover, documents that Appellant attached to her own brief at the district court demonstrate that four days after Merrill's Board approved John Doe's expulsion, Merrill informed Child Protective Services of John Doe's expulsion due to "criminal sexual conduct."  Against this background, the omission of information regarding the assault does not bolster Appellant's claim of deliberate indifference.

Finally, Appellant and the government criticize Merrill for re-enrolling John at Merrill after his time at Breckenridge and for allowing him to return to Merrill after serving his suspension during the 2006–2007 school year.  Appellant's brief argues that "a reasonable inquiry . . . would have . . . revealed" this prior misconduct.  Since the deliberate indifference standard depends on actual knowledge, Appellant cannot rely on Doe's conduct at Breckenridge to show Merrill's indifference.

For these reasons, Appellant fails to demonstrate that Merrill was deliberately indifferent to John Doe's harassment of Jane Doe.  The district court correctly denied her Title IX claim against Merrill.

2.

We likewise affirm the district court's denial of Appellant's Title IX claim against Breckenridge.  Appellant bases this claim on John Doe's harassment of Breckenridge students, stating that the harassment was "so severe, pervasive and objectively offensive . . . that Breckenridge should have been on notice that the student presented a sexual threat to female students, including Jane Doe."  Appellant asserts that Breckenridge was deliberately indifferent because a state law required Breckenridge to expel John for "criminal sexual conduct."

Appellant's arguments fail.  As the district court held, even assuming plaintiffs can ground Title IX claims on third-party harassment:

> Plaintiff has not provided any authority to support the extension of such a principle to conduct that occurs at a school other than the Title IX

plaintiff's or off school grounds entirely. The Court concludes that such a proposition is inconsistent with the purpose of Title IX, which is to hold school districts liable under "circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis*, 526 U.S. at 645. When conduct occurs at a school in another district or off school grounds entirely, the school district has control over neither the harasser, nor the context.

As for a supposed "duty to expel" under Michigan law, the cited statute provides, in relevant part: "If a pupil . . . commits criminal sexual conduct in a school building or on school grounds, the school board . . . shall expel the pupil from the school district permanently, subject to possible reinstatement under subsection (5)." Mich. Comp. Laws § 380.1311(2). Subsection (5) allows expelled students to apply for reinstatement after 180 days. Even if Appellant could establish that John committed such "criminal sexual conduct," this state statute does not empower civil litigants to enforce it in federal court. We therefore affirm.

### B.

We also affirm the district court's dismissal of Appellant's due process claims under § 1983. The Fourteenth Amendment's Due Process Clause does not protect citizens against the actions of private persons, with limited exceptions. One such exception covers "certain 'special relationships' created or assumed by the State with respect to particular individuals, which may give rise to such an affirmative duty and are enforceable through the Due Process clause to provide adequate protection." *Soper v. Hoben*, 195 F.3d 845, 852 (6th Cir. 1999). Even absent a special relationship, the state may not, through its own affirmative acts, cause or greatly increase the risk of harm to its citizens at the hand of private actors. *Sheffield v. City of Fort Thomas, Ky.*, 620 F.3d 596, 613 (6th Cir. 2010). This Court restricts the application of this so-called "state-created danger" doctrine to scenarios where the state's actions "cause a 'special danger' to the plaintiff, *i.e.*, place him specifically at risk, as distinguished from a risk that affects the public at large." *Id.* (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)) (internal quotation marks omitted).

1.

Appellant urges that both the "special relationship" and "state-created danger" exceptions apply to her claims against Merrill. We disagree. Appellant argues that Merrill created a special relationship with Jane when Merrill "assumed the duty to supervise John Doe and denied Jane Doe's parents of knowledge relating to his criminal and behavioral history so as to prevent them from taking appropriate actions themselves." Appellant does not, however, offer any legal authority that requires or even permits Merrill to release information regarding John's behavioral history to Jane's parents. As to the "duty to supervise" that Appellant says Merrill assumed, the IEP requiring constant adult supervision expired nearly two months before the sexual assault. Appellant cites neither facts in the record nor legal authority suggesting that Merrill assumed a duty to supervise John after the 30-day supervision period expired. Consequently, no "special relationship" existed between Merrill and Appellant at the time of the sexual assault.

Appellant also contends that Merrill caused a state-created danger, arguing, in essence, that by telling John to stop sexually harassing Jane, Merrill actually provoked him to harass her more:

> [V]arious notations in [John's student] file reflect that [he] often acted defiantly in response to being told not to do something and as such, by advising [him] to cease all sexually harassing behaviors after the basketball game occurrence, the Defendants herein created a danger that [he] would act, as he had in the past, and defy their directive just for the sake of defiance.

This argument disserves Appellant, vividly illustrating the difficult circumstances that Merrill faced when John failed to respond to the disciplinary measures that Merrill imposed. Indeed, if one follows Appellant's logic regarding John's defiant nature, Merrill officials should have feared that expelling John would further encourage his harassing behavior. We thus reject Appellant's "state-created danger" theory.

2.

Appellant abandoned her § 1983 claims against the Breckenridge Defendants on appeal. At the district court, Appellant opposed the Breckenridge Defendants' motion for summary judgment or dismissal of her § 1983 claim, arguing that the Breckenridge Defendants' failure to fulfill their "affirmative duty to expel John Doe" introduced both a special relationship and a state-created danger. On appeal, however, Appellant bypasses the Breckenridge Defendants in the section of her opening brief discussing her § 1983 claims. The section contains a few generic references to "Defendants" and its heading reads: "THE PLAINTIFF'S § 1983 CLAIM SHOULD NOT HAVE BEEN DISMISSED." As this court holds, however, such vague, generic statements fail to preserve issues on appeal. *See, e.g., Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir. 2003) (holding an issue waived because the "only reference to [Appellant]'s fraudulent inducement claim is in the last sentence of his brief addressed to this court, which requests that we 'reverse the dismissal of Counts I-V'").

Moreover, even a cursory reading of Appellant's brief reveals that her § 1983 arguments pertain only to Merrill. The brief does not assert a "special relationship" or "state-created danger" with respect to the Breckenridge Defendants. Appellant also offered no reply to the Breckenridge Defendants' brief, which argued that she had abandoned her § 1983 claims against them. We deem that claim abandoned.

C.

Finally, Appellant urges us to reverse the district court's dismissal of her 42 U.S.C. § 1985 conspiracy claims against MacLennan (John Doe's mother) and the Breckenridge Defendants. A § 1985(3) claim requires, among other things, that the accused conspirators entered the conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws." *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)) (internal quotation marks omitted). The complaint thus must "allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action." *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir.

1992) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  Further, "conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987).

For her § 1985 claims, Appellant alleges that MacLennan and the Breckenridge Defendants entered into an agreement to purge John Doe's records and not to expel him in exchange for MacLennan's sending him to a different school.  Appellant argues that the Breckenridge Defendants acted with discriminatory animus because their "actions were so irrational in light of [their] blatant violation of the Statute compelling expulsion and making a record of the expulsion [that] the intent to disfavor females can be 'presumed.'"  She cites no specific facts in the record in support of her assertion of discriminatory animus against the Breckenridge Defendants.  Appellant presented the same argument to the district court, which correctly held:

> While the alleged conspirators may have made their decision to transfer John Doe "in spite of" the potential adverse effects on female students at Merrill, no evidence advanced suggests that they selected the course of action "because of" an animus towards female students or female individuals in general.  While Plaintiff argues that the link should be "presumed" because there is no rational explanation for the alleged conspirators' actions, such a proposition is not persuasive . . . .  Breckenridge's desire to avoid complicated litigation is [] a rational motivation.  Accordingly, the alleged conspirators are entitled to summary judgment on Plaintiff's § 1985(3) claim.

Appellant's failure to establish discriminatory animus by the Breckenridge Defendants dooms her § 1985 claim, since a plaintiff alleging a conspiracy to deprive her of her civil rights must establish that the alleged conspirators *shared* a common discriminatory objective.  *See, e.g.*, *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996) ("While they need not produce direct evidence of a meeting of the minds, Appellants must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." (citations omitted)).  Even if Appellant could establish that MacLennan acted with discriminatory

animus, her claim would fail because she cites no facts in the record indicating that the Breckenridge Defendants shared that animus.

III.

For these reasons, we affirm the judgment of the district court.