RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0198p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

AVIENT CORPORATION,

*Plaintiff-Appellant*,

*v.*

WESTLAKE VINYLS, INC.,

*Defendant-Appellee*.

> No. 24-5989

Appeal from the United States District Court for the Western District of Kentucky at Paducah.
No. 5:22-cv-00051—Claria Horn Boom, District Judge.

Argued:  June 12, 2025

Decided and Filed:  July 29, 2025

Before:  CLAY, KETHLEDGE, and STRANCH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Jessica L. Ellsworth, HOGAN LOVELLS US LLP, Washington, D.C., for Appellant.  David A. Super, BRACEWELL LLP, Washington, D.C., for Appellee.  **ON BRIEF:** Jessica L. Ellsworth, Michael J. West, J. Andrew Mackenzie, HOGAN LOVELLS US LLP, Washington, D.C., Davina Pujari, WILMER CUTLER PICKERING HALE AND DORR LLP, San Francisco, California, Daniel S. Volchok, Joseph M. Meyer, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., Mark S. Riddle, Melissa Norman Bork, DENTONS BINGHAM GREENEBAUM LLP, Louisville, Kentucky, for Appellant. David A. Super, Britt Cass Steckman, BRACEWELL LLP, Washington, D.C., Adam T. Goebel, Angela S. Fetcher, Adam C. Reeves, STOLL KEENON OGDEN PLLC, Louisville, Kentucky, for Appellee.

―――――――――

**OPINION**

―――――――――

KETHLEDGE, Circuit Judge.  This case involves a settlement agreement that requires (as relevant here) Avient Corporation and Westlake Vinyls, Inc. to arbitrate certain disputes about the allocation of cleanup costs at a Superfund site in Kentucky.  Avient has twice demanded arbitration under the agreement.  But now it opposes Westlake's demand for arbitration, on the ground, it says, that the agreement's arbitration provisions have been invalid all along.  The district court granted summary judgment to Westlake, holding that Avient had waived its right to raise that argument.  We affirm on other grounds.

I.

A.

In the 1950s, Goodrich Corporation built a vinyl-manufacturing complex in Calvert City, Kentucky.  For decades, Goodrich used unlined, earthen ponds to dispose of hazardous waste.  In 1986, it installed lined containment cells to address concerns about environmental contamination.  Goodrich then drained, dredged, and backfilled the earthen ponds.  It also installed a network of wells and a "steam stripper" to capture and decontaminate groundwater before it spread beyond the property.  Two years later, the EPA declared the complex a Superfund site and estimated that it would take more than a century to fully remediate the contamination.  A year later, state regulators issued Goodrich a permit that required Goodrich to initiate a "plantwide corrective action program" that included long-term operation of the wells and steam stripper.

In the 1990s, Goodrich sold the Calvert City complex to Westlake.  In the sales agreements, Goodrich promised to cover future cleanup costs and to indemnify Westlake for any losses related to that process.  Westlake, for its part, agreed to hold Goodrich harmless for costs attributable to Westlake's use of the complex.  In 2000, PolyOne Corporation (now Avient) assumed Goodrich's rights and responsibilities related to the Calvert City complex through a merger with a Goodrich subsidiary.

In 2003, Avient refused to pay part of the cost of operating the wells and steam stripper because (it argued) Westlake had exacerbated environmental problems at the site. In particular, Avient pointed to an incident in 2002 in which a storage tank had spilled two million pounds of ethylene dichloride—one of the main contaminants at the site. In 2004, Westlake sued Goodrich to recover the amounts Avient had refused to pay. Goodrich in turn impleaded Avient and filed counterclaims against Westlake. Avient also filed counterclaims against Goodrich and Westlake. Three years later, the parties settled. That settlement agreement is the subject of this litigation.

In broad terms, the agreement resolved all claims regarding past cleanup costs and established a mechanism to allocate future ones. As to pre-settlement costs, Section 2 provided that all three parties would dismiss with prejudice their competing claims. It also released Goodrich and Westlake from liability regarding past costs (leaving Avient alone responsible for them), but required Westlake to pay a lump sum to Avient to cover Westlake's share of those costs.

Prospectively, Sections 3, 4, and 5 provided that each party will cover a portion (to be determined through arbitration) of "allocable costs"—that is, "actual out-of-pocket expenditures" related to the cleanup and containment efforts. Agmt. § 3.3. At the outset, Avient agreed to pay 100% of allocable costs, but Section 3 allowed Avient to seek arbitration to adjust that percentage after one year. Under Section 4, either party can seek to modify the cost allocation by demanding arbitration; but the parties can initiate only one arbitration proceeding "during a single five-year period[.]" *Id.* § 4.1. Once a party has demanded arbitration and the opposing party has filed any counterclaims, the arbitrators must determine the total amount of allocable costs at issue and the dollar amount to be paid by each party. Section 5 provides (among other things) that the percentage of costs allocated to each party in an arbitration proceeding will apply to future costs until either party demands arbitration to adjust those percentages.

The provisions at issue here are in Section 6, which (among other things) purport to allow either party to seek "a de novo judicial determination of (1) the amount of the Allocable Costs, and/or (2) the appropriate dollar division of the Allocable Costs between the Parties." *Id.* § 6.3. But § 6.5 presents a significant barrier to the exercise of that purported right: if the party that seeks de novo judicial review fails to reduce the percentage of costs allocated to it by the

arbitrators by at least half, then that party must pay (1) the entirety of the other party's legal fees for both the arbitration and the court proceeding, and (2) the other party's expenses and expert costs for the court proceeding. *Id*. § 6.5(a). In the 17 years since the agreement was signed, no party has sought de novo judicial review under this provision.

B.

Avient has twice sought arbitration under the agreement. It first did so in 2010, but ended that arbitration after Goodrich agreed to cover most of the costs at issue. In 2017, Avient again demanded arbitration, and Westlake filed counterclaims. Avient then sued in federal court to challenge the arbitration panel's jurisdiction over Westlake's counterclaims. The district court held that the arbitrability of those counterclaims was a question for the arbitration panel, so it dismissed Avient's complaint. *PolyOne Corp. v. Westlake Vinyls, Inc.*, No. 5:17-cv-157, 2018 WL 2437241 (W.D. Ky. May 30, 2018).

In 2018—a year into the arbitration that Avient itself had demanded—Avient again sued in federal court, this time arguing that the settlement agreement's arbitration provisions were invalid. The district court held that Avient had waived that argument by initiating the arbitration. *PolyOne Corp. v. Westlake Vinyls, Inc.*, No. 5:18-cv-107, 2019 WL 238018 (W.D. Ky. Jan. 16, 2019). We affirmed. *See* 937 F.3d 692, 701 (6th Cir. 2019).

The panel for the 2017 arbitration ultimately found Avient responsible for all the allocable costs at issue there. Westlake sued to enforce that award; in response, Avient challenged the award on the more limited grounds specified in the Federal Arbitration Act, 9 U.S.C. §§ 10-11. The district court enforced the award. *PolyOne Corp. v. Westlake Vinyls, Inc.*, No. 5:19-cv-121, 2020 WL 695657 (W.D. Ky. Feb. 11, 2020). Avient did not challenge that decision.

The parties' third arbitration began in 2022, this time demanded by Westlake. Avient then brought this suit, again claiming that the settlement agreement's arbitration provisions are invalid. The district court eventually granted summary judgment to Westlake, holding that Avient's challenge to the arbitration provisions was waived by prelitigation conduct and barred by res judicata and judicial estoppel. This appeal followed.

II.

We review de novo the district court's grant of summary judgment. *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012). In doing so, we can affirm on any basis supported by the record. *Id.*

This is now the second appeal in which Avient (or its predecessor PolyOne) has come to this court with a challenge to the arbitration provisions' validity. And in this appeal Avient twice urges us to "put this years-long dispute to rest." Br. at 54; Reply at 27. We choose to do that and so address the merits of Avient's claim. That claim runs as follows: that § 6.3 of the settlement agreement—which provides for de novo judicial review of arbitration awards—is invalid under the Federal Arbitration Act; that § 6.3 is not severable from the arbitration provisions as a whole; and hence that those provisions altogether are invalid.

The first premise of that claim—that § 6.3 is invalid—is undisputed. In 2008, the Supreme Court held that the only grounds on which a federal court can vacate, modify, or correct an arbitration award are those specified in the Federal Arbitration Act. *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582-84 (2008). Those grounds are narrowly limited: the court can set aside an award for fraud or corruption on the arbitrators' part, for example, but generally cannot review the substance of the arbitrators' decision—for that would undermine the whole point of arbitration. *See* 9 U.S.C. §§ 10-11; *Hall Street*, 552 U.S. at 588. In *Hall Street*, the parties' arbitration agreement included a judicial-review provision that purported to expand those grounds—in part by providing for de novo review of "the arbitrator's conclusions of law." *Id.* at 579. But § 9 of the Act provides that a district court "must" confirm an arbitration award "'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11." *Id.* at 582 (quoting 9 U.S.C. § 9). Thus, the Court concluded, "the grounds for vacatur and modification provided by §§ 10 and 11 of the FAA are exclusive." *Id.* at 581. Hence the Court held that the judicial-review provision there was invalid. Here, § 6.3 likewise purports to expand the grounds on which a federal district court could vacate or modify an arbitration award under the agreement. Section 6.3 too is therefore invalid.

But Avient's second premise—that the arbitration provisions as a whole are invalid—does not necessarily follow.  We interpret the settlement agreement under Kentucky law, which absent some ambiguity directs us to apply the agreement according to its terms.  *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384-85 (Ky. Ct. App. 2002).

Here, by its plain terms, the settlement agreement sets a default in favor of severing any invalid provision and leaving the rest of the parties' agreement intact.  Section 14 of the settlement agreement provides:

> In the event that any provision of this Agreement shall be finally determined to be unenforceable, such provision shall, so long as the economic and legal substance of the transactions contemplated hereby is not affected in any materially adverse manner as to any Party, be deemed severed from this Agreement.

Avient offers two reasons why—notwithstanding this provision—it thinks § 6.3 cannot be severed from the rest of the agreement's arbitration provisions.  The first, Avient says, is that § 14 "provid[es] that no 'material' term may be severed."  Reply at 24.  But § 14 does not say that.  Indeed the word "material" is absent from § 14.  The question here, therefore, is not whether, absent § 6.3, the parties would have entered into the settlement agreement (or agreed to the arbitration provisions—the parties' briefing is conclusory as to which substrate is apposite here).  *See generally Citizen Potawatomi Nation v. Oklahoma*, 881 F.3d 1226 (10th Cir. 2018).  Instead, the question here is the one posed by § 14 itself:  namely, whether "the economic and legal substance of the transactions contemplated hereby is . . . affected in any materially adverse manner as to any Party."  Agmt. § 14.  Thus, as applied here, § 14 asks whether severance of § 6.3 would affect those "transactions" in a manner "adverse" to either party.

Avient makes no serious effort to answer that question.  And indeed, that Avient chose to demand arbitration in 2017—some eight years after the Supreme Court's decision in *Hall Street* would have made obvious to any legal observer that § 6.3 was invalid—suggests that the likely invalidity of § 6.3 did not impede the parties' use of the arbitration process itself.  Avient does say that—by providing for de novo judicial review of arbitration awards—§ 6.3 left the parties "entirely free to reject any arbitral award" made against them.  Br. at 56.  But that assertion likewise elides what the agreement actually says:  in this instance, that any party that rejects an award (by challenging it in court) must—absent a decisive victory that cuts its liability in half—

pay the other party's legal fees not only for the court litigation, but also for the entire arbitration itself. Agmt. § 6.5. Hence the freedom that Avient invokes was hardly "free." And relatedly one can wonder why the parties would spend (as they presumably did in the 2017 arbitration) seven-figure sums arbitrating issues whose determination either side would be "entirely free" to reject. The reality is that, under this agreement, rejection of any arbitration award would come at very significant potential cost.

Avient otherwise argues that we should invalidate the entire arbitration agreement because that is what the Tenth Circuit did when it "considered a similar provision[,]" Br. at 55, in *Potawatomi*, 881 F.3d at 1241. There, Oklahoma and the Citizen Potawatomi Nation "entered into a Tribal-State gaming compact" in which the parties agreed to arbitrate their disputes. *Id*. at 1228. And there too the arbitration agreement provided for de novo review of any arbitration award made pursuant to the agreement, which the court (under *Hall Street*) held to be invalid. But there the common ground between these cases ends. The severance provision in *Potawatomi* required only a showing that the invalidated "subsection is material." *Id*. at 1240 n.20 (quoting Okla. Stat. tit. § 281). And there—based on the agreement's text, namely a series of "subject to" clauses, *id.*—the court found that "the parties' agreement to engage in binding arbitration was specifically conditioned on, and inextricably linked to, the availability of de novo review in federal court." *Id.* at 1239-40. Moreover, in *Potawatomi* both parties possessed sovereign immunity; and the court held they had waived it "only for purposes of the type of de novo review contemplated in Part 12(3), not for suits to enforce an arbitration award under the limited review procedures set out in 9 U.S.C. §§ 9-11." *Id.* at 1240. Hence the court concluded that "the availability of de novo review was a material aspect of the parties' agreement to arbitrate." *Id*. Here, by contrast, the parties did not make their agreement to arbitrate "subject to" the availability of de novo judicial review; nor does either of them have sovereign immunity; nor does the severance clause ask merely whether the invalid provision is "material." "[W]e do not construe contractual provisions in gross." *Bennett v. State Farm Mut. Ins. Co.*, 731 F.3d 584, 585 (6th Cir. 2013) (quoting *Abercrombie & Fitch Co. v. Fed. Ins. Co.*, 370 F. App'x 563, 573 (6th Cir. 2010) (dissenting opinion)). We have no disagreement with the court's reasoning in *Potawatomi*; but there the court answered a different contractual question on patently different facts than the ones we face here.

Finally, severance of § 6.3 would leave Avient and Westlake in exactly the same position as every other party that agrees to arbitrate commercial disputes under the Federal Arbitration Act. That is hardly an impossible position for disputants to find themselves in. And meanwhile, in 17 years, neither party to this agreement ever chose to invoke § 6.3 to seek de novo review of an arbitral award. Avient has given us no basis, therefore, to conclude that severance of § 6.3 would affect "in any materially adverse manner as to any Party" the "economic and legal substance of the transactions contemplated" under the parties' settlement agreement. We therefore deem § 6.3 severed from the agreement, which otherwise remains in effect.

\* \* \*

The district court's judgment is affirmed.