**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-1669**

---

JANE ROE,

        Plaintiff – Appellant,

    v.

MARSHALL UNIVERSITY BOARD OF GOVERNORS,

        Defendant – Appellee.

---

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (3:22-cv-00532)

---

Argued:  May 8, 2025                                   Decided:  July 31, 2025

---

Before KING, AGEE, and QUATTLEBAUM, Circuit Judges.

---

Affirmed by published opinion.  Judge King wrote the opinion, in which Judge Agee joined in full, and Judge Quattlebaum joined except as to Part III.B.  Judge Quattlebaum wrote a separate opinion concurring in the judgment.

---

**ARGUED:** Gregory Bowe, BOSTON UNIVERSITY APPELLATE CLINIC, Boston, Massachusetts, for Appellant.  Perry W. Oxley, OXLEY RICH SAMMONS, PLLC, Huntington, West Virginia, for Appellee.  **ON BRIEF:** Ryan M. Donovan, J. Zak Ritchie, HISSAM FORMAN DONOVAN RITCHIE PLLC, Charleston, West Virginia; Erin Hunter, Sarah Monahan, Student Counsel, Madeline Meth, BOSTON UNIVERSITY APPELLATE CLINIC, Boston, Massachusetts, for Appellant.  David E. Rich, Brian D.

Morrison, J. Jarrod Jordan, Zachary T. Ramey, OXLEY RICH SAMMONS, PLLC, Huntington, West Virginia, for Appellee.

_____

KING, Circuit Judge:

Plaintiff Jane Roe pursues this appeal from a summary judgment award that denied Title IX claims she pursued in the Southern District of West Virginia.[1]  More specifically, Roe challenges the district court's rulings in favor of the Marshall University Board of Governors ("Marshall," or the "University") on her claims of deliberate indifference and retaliation.  *See Roe v. Marshall Univ. Bd. of Governors*, No. 3:22-cv-532, 2024 WL 3153238 (S.D. W.Va. June 24, 2024) (the "Summary Judgment ruling").  As explained herein, we are satisfied that the court did not err in making its challenged rulings.  We therefore affirm the judgment.

## I.

The events underlying this appeal arose from a series of events that occurred after a September 2022 football game when a Marshall student sexually assaulted plaintiff Roe at an off-campus residence.  The litigation primarily concerns the University's response, after it was informed of the assault incident by the Huntington Police.  Because this is an appeal from a summary judgment award, we recount the relevant events in the light most favorable to plaintiff Roe, as the non-moving party.  *See SD3 II LLC v. Black & Decker (U.S.) Inc.*, 888 F.3d 98, 103 (4th Cir. 2018).

---

[1] Title IX of the Education Amendments of 1972, as codified in 20 U.S.C. § 1681 *et seq.*, prohibits discrimination by educational institutions on the basis of sex in educational programs and activities receiving federal funding and financial assistance.

3

A.

On September 3, 2022, Marshall hosted a Saturday afternoon football game, which plaintiff Roe attended. While watching the game, Roe encountered her ex-boyfriend, referred to herein as John Doe.[2] They shared a brief hug, and after parting ways Roe left the stadium. Later that day, Roe attended an off-campus post-game party on Marion Court in Huntington, near the Marshall campus. Approximately 15 persons were present at the off-campus party.

During the party, plaintiff Roe consumed what she described as "a couple shots" of alcohol and encountered Doe, who appeared to be "blackout drunk." *See* J.A. 441–42, 894.[3] They briefly spoke before deciding to go into a bathroom for privacy reasons. Inside the bathroom, Doe's behavior turned violent. He pushed Roe into a wall, placed his hands around her neck, and attempted to pull her pants down and place his hands inside.

After someone knocked on the bathroom door, plaintiff Roe escaped and left the residence. But Doe followed, and then sought to kiss Roe. When she refused, he bit her mouth, drawing blood. Distressed by the situation, Roe phoned her brother, who advised

---

[2] When she filed her complaint in the district court, plaintiff Roe also moved for leave to proceed anonymously and for entry of a protective order in that regard. Marshall did not oppose the motion. On April 6, 2023, the court granted that request, allowing Roe to proceed under a pseudonym and entering a protective order prohibiting public disclosure of the real names of plaintiff Roe, her assailant Doe, and any other Marshall students involved in the incident or related disciplinary proceedings. *See Roe v. Marshall Univ. Bd. of Govs.*, 3:22-cv-532 (S.D. W.Va. April 6, 2023), ECF No. 19. Our references herein to Roe and Doe are consistent with that protective order.

[3] Our citations herein to "J.A. ___" refer to the Joint Appendix filed by the parties.

4

her to call 911. Someone at the post-game party also called the Police, and Huntington officers responded.

When the officers arrived, they found Doe on the front porch of the residence and arrested him, charging him with domestic battery. The Police officers observed that plaintiff Roe had visible marks on her lower lip that were consistent with being bitten, as well as bruises on her neck. The Huntington officers recorded the details in their incident report, and they notified the Marshall Police Department. The Marshall Police then referred the matter to the University's Title IX office, pending further investigation and handling.

B.

On September 7, 2022, the University's Title IX Evaluation Committee reviewed the incident report of the Huntington Police and determined that the off-campus assault, though very serious, did not fall within the University's Title IX jurisdiction. The Committee concluded that, because the assault incident had occurred off-campus and was not part of a University-sponsored activity, it did not satisfy controlling federal regulations and the University's Title IX policies.

Pursuant to federal regulations that are codified at 34 C.F.R. § 106.44(a), educational institutions are obligated to respond to allegations of sex discrimination that occur within their programs and activities. Marshall has adopted a Policy in that regard — called Policy No. GA-1 — which limits its Title IX jurisdiction to improper sex-related conduct where the University had substantial control over both the respondent and the complainant, as well as the environment where alleged sexual harassment occurred. *See*

5

J.A. 114. That Policy thus excludes from Title IX jurisdiction any conduct that (1) does not meet the definition of sexual harassment under the policy, (2) did not occur within a University educational program or activity, or (3) did not occur within the United States. *Id.*

Based on the Policy's framework, the Title IX Evaluation Committee recognized that improper sex-related conduct at a private off-campus location outside the University's substantial control was excluded from Marshall's Title IX jurisdiction. And the off-campus post-game party where this incident occurred on September 3, 2022, was not affiliated with Marshall. That is, neither the University nor any of its student organizations owned or controlled the subject residence on Marion Court, nor did the University sponsor or sanction the off-campus party. The event was thus deemed as a private gathering, with no prior involvement or knowledge by the University. As a result, the Committee referred the matter to Marshall's Office of Student Conduct for its consideration.

## C.

After the Office of Student Conduct took over the investigation, a Ms. Arthur, its Assistant Director, led the investigative efforts. On September 7, Ms. Arthur issued "No Contact Orders" to plaintiff Roe and to Doe. Ms. Arthur also informed Doe that he was charged with two violations of the Student Code of Rights and Responsibilities (the "Student Code"), specifically its provisions relating to "physical or emotional/psychological abuse" and "relationship violence." *See* J.A. 897–98, 915, 917. Ms. Arthur also contacted plaintiff Roe and sought her participation as a witness in Doe's

6

investigation. Over the next few weeks, Ms. Arthur met with and interviewed both Roe and Doe to gather information and discuss the relevant events.

On September 13, 2022, Doe met with Ms. Arthur, but he declined to make a formal statement. Doe confirmed to Ms. Arthur, however, the general accuracy of the Huntington Police incident report, and he also then answered some other questions. On September 15 and 21, plaintiff Roe met with and provided Ms. Arthur with her version of the relevant events. Roe confirmed, inter alia, that she had consumed alcohol at the post-game party and that she had observed Doe drinking heavily. She also told Ms. Arthur that Doe "ha[d] been verbally and emotionally abusive before, but never this violent." J.A. 894. When asked for details about Doe's prior behavior, however, Roe did not provide any additional information. Ms. Arthur also sought information from both plaintiff Roe and Doe about other party-goers. But neither Roe nor Doe were willing to identify or provide the names of other persons present at the post-game party.

Doe met with Ms. Arthur again on September 23, but he declined to discuss either his alcohol consumption at the post-game party or whether he had seen Roe drinking, citing his own legal concerns. Doe also asked that the University delay its investigation until after his criminal case had concluded, but Ms. Arthur rejected that request. On October 7, Doe again met with Ms. Arthur with questions about the No Contact Order and the investigation process.

About two weeks later, on October 20, 2022, Ms. Arthur informed Doe that he would be held responsible by Marshall for violating three sections of the Student Code, that is, provisions relating to "underage consumption," "physical or

7

emotional/psychological abuse," and "relationship violence." *See* J.A. 900. Predicated on photographic evidence of Roe's injuries to her neck and lip, her medical records, and Doe's failure to present an alternative account of the events, Ms. Arthur decided that the standard of proof had been satisfied. Doe then accepted responsibility for the three Student Code violations. As a result, Doe was placed on probation for a few weeks by the University, until December 12, 2022, was required to participate in an Alcohol Education Course, was ordered to perform 20 hours of community service, and was directed to submit to the University a document called a "reflection paper." *See* J.A. 901.

That same day, October 20, 2022, plaintiff Roe was charged by the University with having violated the "underage consumption" provision of the Student Code. *See* J.A. 909. This charge was based solely on Roe's admission — as a witness in Doe's student conduct investigation — of having consumed alcohol at the post-game party. Ms. Arthur informed Roe about the charge lodged against her by Marshall and explained to Roe that she had two options: (1) she could request a formal hearing with an advisor, or (2) she could accept what the charge letter called a "voluntary resolution." *See* J.A. 910. If she chose the voluntary resolution, Roe would need to accept responsibility. In doing so, she would receive essentially the same disciplinary sanctions that Doe had received, except her community service would be limited to 10 hours instead of 20. That is, she would accept University probation, complete an Alcohol Education Course, perform her 10 hours of community service, and submit a "reflection paper." *See* J.A. 911–12. On October 24, Roe accepted the voluntary resolution and resolved Marshall's charge against her. Less than a month later, Roe initiated this lawsuit in the Southern District of West Virginia.

8

D.

Plaintiff Roe filed her initial complaint on November 21, 2022, alleging a single claim of deliberate indifference against Marshall. She amended her complaint on June 30, 2023, and then alleged two counts. First, the complaint alleged that the University's insufficient response to Roe's report of sexual harassment amounted to deliberate indifference. Second, Roe alleged that the University had retaliated against her for reporting Doe's assault and sexual harassment, in that Marshall had disciplined her for underage drinking after she had voluntarily participated as a witness in Doe's Student Conduct investigation.

After the parties conducted extensive discovery, the University moved for summary judgment on each of plaintiff Roe's Title IX claims. The district court heard and considered the arguments of the lawyers. On June 24, 2024, the court filed its Summary Judgment ruling in favor of Marshall. It explained that, in the circumstances, Marshall's response to the sexual harassment by Doe did not amount to deliberate indifference, and the University had not retaliated against Roe for reporting her sexual harassment by Doe.

Plaintiff Roe has filed a timely notice of appeal, and we possess final order jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review de novo a district court's award of summary judgment. *See Jennings v. Univ. of N.C.*, 482 F.3d 686, 694 (4th Cir. 2007) (en banc). And an award of summary judgment is only appropriate when, after reviewing the facts in the light most favorable to

9

the nonmoving party, the moving party has established that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Pursuant to Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has recognized that Title IX encompasses claims of student-on-student sexual harassment, if an educational institution acts with deliberate indifference to known acts of such harassment in its programs or activities. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 639 (1999). In addition, retaliation by such an institution against an individual who reports sexual harassment or assault is a violation of Title IX. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005).

Plaintiff Roe's appellate contentions are twofold. First, Roe maintains that Marshall's deliberate indifference to the September 3, 2022, sexual assault against her by Doe was discriminatory and interfered with her education. Second, she contends that the University retaliated against her for reporting the sexual assault against her by Doe, by disciplining her and failing to provide her with appropriate supportive measures. We dispose of Roe's contentions in turn.

10

## A.

Consistent with the Supreme Court's *Davis* principles, we have recognized that a plaintiff alleging a Title IX claim on the basis of sexual harassment must demonstrate: (1) that the educational institution receives federal funding; (2) that the plaintiff "was subject to harassment based on her sex"; (3) that "the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity"; and (4) "there is a basis for imputing liability to the institution." *See Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007) (en banc). The fourth factor is guided by the principle that an institution may be held liable for deliberate indifference to known sexual harassment only if it had substantial control over both the harasser and the context of the harassment. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645 (1999).

On appeal, plaintiff Roe maintains that Marshall should be liable to her for its deliberate indifference in this situation. In its defense, Marshall does not dispute any of the first three elements of this claim. It challenges liability solely on the fourth element, contending that there is no basis for imputing liability to the University.[4]

In its Summary Judgment ruling, the district court recognized that "nothing suggests [Marshall] controlled — let alone substantially controlled — the context of the harassment[,]" observing that "[a]ll told, the September 3rd party at [6]59 Marion Court

---

[4] Roe seems to conflate control over the harasser with control over the context of the harassment. These are distinct inquiries, however, each requiring a separate analysis. *See Davis*, 526 U.S. at 645; *Hurley*, 911 F.3d 674 at 687 (recognizing that Title IX liability requires substantial control over the harasser on one hand, and the context of the harassment on the other hand, as separate inquiries).

11

took place in a 'random off-campus apartment' with no connection to the [U]niversity." *See* Summary Judgment ruling at 12–13 (citation omitted). The court did not err in making that determination.

Although the location of a sexual harassment incident is not always dispositive, it is a relevant consideration in an assessment of whether an educational institution exercised control over the context of an harassment incident. *See Brown v. Arizona*, 82 F.4th 863, 878 (9th Cir. 2023) (en banc) ("[T]he location of harassment can be important" when determining control over context, "[b]ut location is only one factor[.]"). Several courts have recognized that Title IX liability can extend to off-campus conduct when the educational institution sponsors, supervises, or otherwise exercises substantial control over a setting where sexual harassment has occurred. *See Davis*, 526 U.S. at 645–46 (recognizing that liability attaches where harassing conduct occurs "in a context subject to the [university's] control"); *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 687–88 (4th Cir. 2018) (recognizing substantial control over context where harassment occurred on or near campus using university's network, targeted university students, and university had ability to restrict access and respond).

Likewise, some courts have extended liability off-campus when the educational institution regulates the relevant locations and enforces disciplinary rules. *See Brown*, 82 F.4th at 878–79 (finding control over context of harassment where university, through its coaches, exercised disciplinary authority over athlete's off-campus housing and conduct); *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1184–85 (10th Cir. 2007) (recognizing substantial control over context of harassment where coach knowingly maintained

12

unsupervised recruiting program despite prior incidents and obvious risk of sexual assaults during recruiting visits). Liability may also attach where the harassment occurs on school-controlled property or during school-sponsored events, such as on a school bus or field trip. *See e.g.*, *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 668 (2d Cir. 2012) (applying *Davis* standard in Title VI context); *see also Davis*, 526 U.S. at 646.

Nevertheless, various courts have declined to impose Title IX liability where sexual harassment incidents occurred at locations outside the educational institution's oversight, particularly when the institution lacked notice of prior misconduct. *See Roe v. St. Louis Univ.*, 746 F.3d 874, 883–84 (8th Cir. 2014) (explaining lack of control over context of sexual harassment where rape incident occurred at private off-campus party, with no evidence that university controlled setting or student conduct); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 366 (6th Cir. 2012) ("When conduct occurs . . . off school grounds entirely, the school district has control over neither the harasser, nor the context."); *Ostrander v. Duggan*, 341 F.3d 745, 750–51 (8th Cir. 2003) (recognizing lack of control of off-campus residence where sexual assault occurred, because university did not own, possess, or control premises).

In this situation, the sexual assault by Doe of plaintiff Roe occurred at a private, off-campus residence unconnected to any University-sponsored program, organization, or event. Marshall had no prior knowledge of the off-campus post-game party, nor did it exercise any supervision or control over the location or those present. Although Roe later advised the University of the incident, Marshall had no opportunity to intervene or prevent

13

the assault on Roe. And while Roe reported Doe's behavior during the Student Conduct investigation, the University had no prior knowledge of that behavior.

This appeal is readily distinguishable from the factual setting underpinning our *Hurley* decision. There, the harassing conduct — anonymous online threats and misogynistic messages posted on Yik Yak, a pseudonymous social media app — occurred on or near the university campus, involved campus internet resources, and was known to several university officials, who failed to take action. *See Hurley*, 911 F.3d at 687–88. Moreover, the conduct in *Hurley* was not simply a single incident, but was more of a prolonged campaign that permeated the university's environment and implicated related organizations.

Plaintiff Roe argues that *Hurley* applies because the events here occurred "within the immediate vicinity of . . . campus." 911 F.3d at 687. This contention is misplaced. Geographic proximity alone will not establish substantial control over the context of sexual harassment. The critical inquiry, consistent with the *Davis* decision, is whether the University had the authority to supervise, regulate, or prevent the harassing conduct, not merely whether it occurred near the campus. *See Davis*, 526 U.S. at 645; *see also Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1121 n.1 (10th Cir. 2008) (explaining that there must be "some nexus between the out-of-school conduct and the school").

Here, the assault on Roe occurred at a private residence unaffiliated with Marshall, and it did not involve the use of campus facilities or resources. Unlike in *Hurley*, Marshall lacked any authority or control over the location and the unlawful activity in question.

14

Accordingly, we agree with the district court that the University cannot be liable under Title IX for deliberate indifference. In these circumstances, and having carefully assessed the issues and the record de novo, the court did not err in awarding summary judgment to Marshall on Roe's deliberate indifference claim.

B.

We next address plaintiff Roe's claim of retaliation against her by Marshall. Although Title IX does not expressly provide a cause of action for retaliation, the Supreme Court has ruled that "the private right of action implied by Title IX encompasses claims of retaliation." *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005). In the absence of a statutory backdrop, we look to Title VII of the Civil Rights Act of 1964 to provide an applicable legal framework. *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 694 (4th Cir. 2018); *see also Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007) (en banc) ("We look to case law interpreting Title VII of the Civil Rights Act of 1964 for guidance in evaluating a claim brought under Title IX.").

To succeed on a retaliation claim under the Title IX framework, a plaintiff must show (1) "that [she] engaged in a protected activity under Title IX" and (2) "that — as a result of [her] protected activity — [she] suffered an adverse action attributable to the defendant educational institution." *Id.* And plaintiff Roe was entitled to prove retaliation through either direct or indirect evidence, or by proceeding under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Lashley v. Spartanburg Methodist College*, 66 F.4th 168, 174 (4th Cir. 2023).

15

Because plaintiff Roe presented no direct evidence of retaliatory conduct by Marshall, we will apply the three-step *McDonnell Douglas* burden-shifting framework. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). Under that approach, Roe is obliged to make a prima facie showing of retaliation, by evidence that she engaged in protected activity and suffered an adverse action because of it. *See Lashley*, 66 F.4th at 174. If she satisfies this initial burden, Marshall is entitled to "rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions." *Id.* (quoting *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 578 (4th Cir. 2015)). "Then the burden shifts back to [plaintiff Roe] to show that the proffered reason is pretext." *Id.* However, plaintiff Roe "always bears the ultimate burden of persuading the trier of fact that she was the victim of retaliation." *Id.* (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001)).

Of course, at summary judgment, Roe need not prove her case. She must only point to evidence that, when considered in the light most favorable to her, creates a genuine issue of material fact. *See* Fed. R. Civ. P. 56(a); *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (explaining that to defeat summary judgment, "[t]he burden is on the nonmoving party to show that there is a genuine issue of material fact for trial"). To home in on the dispositive *McDonnell Douglas* factor of this case — pretext — "the plaintiff need only present sufficient evidence to create a 'genuine dispute as to' whether the [University's] stated reason was pretextual." *Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1553 (2025) (Thomas, J., with Gorsuch, J. joining, concurring) (quoting Fed. R. Civ P. 56(a)).

16

Applying the *McDonnell Douglas* framework in our de novo review, we are satisfied that plaintiff Roe's retaliation claim does not survive summary judgment. Roe's retaliation claim fails at the third step of the burden-shifting framework, as she cannot show that Marshall's proffered reasons for disciplining her were pretextual. Indeed, Roe conceded in the district court proceedings that the University had a legitimate, nonretaliatory reason for charging her under the Student Code. That is, she admitted that she had violated the Code's prohibition against underage drinking.

Plaintiff Roe offers several contentions on appeal that she contends point to Marshall's retaliatory motive. But none of those examples carry much weight. Like the district court, we are satisfied that the University was entitled to summary judgment because Roe did not produce sufficient evidence for a reasonable jury to conclude that its stated reason for the charge against Roe — that she confessed to underage drinking — was false, or that retaliation for her complaint against Doe was the real reason for Marshall's decision to charge her.

Plaintiff Roe argues several concerns that, in her view, suggest a retaliatory motive on the part of Marshall. Specifically, Roe points to (1) deviations from established disciplinary procedures; (2) the University's failure to investigate other students who attended the same post-game party; (3) Marshall's failure to investigate Roe's reports of Doe's prior violent behavior; (4) the absence of an amnesty policy at Marshall for students who voluntarily report sexual assaults; (5) Marshall's supposed hostility towards Roe, including its failure to provide adequate supportive measures; (6) the temporal proximity

17

between Roe's report of Doe's assault and the University's disciplinary action; and (7) Marshall's broader Title IX failings and reputational concerns.

Turning to those contentions, we respond to each of them. First, plaintiff Roe asserts that Marshall deviated from its normal disciplinary procedures by waiting more than a month before issuing its letter concerning her underage drinking. But that delay — absent more — does not suggest or prove a retaliatory intent on the part of the University. Nor does such a delay undermine the legitimacy of the University's reason for her discipline, that is, Roe's violation of the Student Code's prohibition against underage drinking.

Second, plaintiff Roe maintains that Marshall failed to investigate other students that attended the off-campus post-game party, and who may have also been underage and consuming alcohol. But we know that both Roe and Doe declined to identify or provide information about such students. And Roe presented no evidence that the University knew who the other party-goers were, whether they were Marshall students, or whether they were underage and consuming alcohol.[5] Without this context, the comparator evidence lacks any compelling probative value.

Third, plaintiff Roe contends that Marshall failed to investigate her allegations that Doe had previously engaged in violent conduct against her. But when Ms. Arthur asked Roe to provide information in that regard, Roe declined to do so. Without Roe's

---

[5] Roe points out that she informed Ms. Arthur that Roe's friend "Abby" brought her to the party. Although it later came to light that Abby is a student at Marshall, nothing in the record indicates that Ms. Arthur knew Abby was a student or that she drank at the party. Nor is there any evidence Roe provided Abby's last name, let alone any contact information.

18

cooperation on that point, the University's ability to pursue her contention further would not support a retaliatory animus.

Fourth, plaintiff Roe emphasizes Marshall's lack of an amnesty policy for students who voluntarily report sexual assaults, contrasting that absence with a University policy offering amnesty in situations involving medical emergencies. Assuming this policy distinction may be inconsistent, Roe failed to show that the absence of amnesty for those who report sexual assaults was motivated by any retaliatory intentions or applied in a discriminatory manner.

Fifth, plaintiff Roe alleges that Marshall demonstrated its hostility toward her situation by failing to offer her any supportive measures after her confirmation of the sexual assault by Doe. But Roe never requested any such accommodations, and a mutual "No Contact Order" had been promptly issued by the University when it learned of the assault incident.

Sixth, plaintiff Roe suggests that the timing of the disciplinary charge against her — four to six weeks after her confirmation of Doe's assault against her — is indicative of pretext. But this timing contention would more likely undermine a deliberate indifference theory than support a retaliation claim. Far from suggesting either delay or disregard, the University's relatively swift response to the sexual assault report from the Huntington Police about Doe undercuts an inference of retaliatory intent.

Finally, plaintiff Roe emphasizes that Marshall had prior Title IX failings and contends that a resulting public-relations crisis gave the University an institutional motive to suppress reports of sexual harassment. But as the district court explained, "generalized

19

evidence, standing alone, cannot satisfy a Title IX plaintiff's summary judgment burden." *See* Summary Judgment ruling at 23 (quoting *Doe v. Univ. of Denver*, 1 F.4th 822, 831 (10th Cir. 2021)).   Although Roe recounts a series of events involving institutional pressure, none of those events connects to her case.  As the court observed, the record "lacks any sign deviating from [Marshall's] explanation." *Id.*  at 22.  That fact, as the court reasoned, was "more persuasive than Roe's evidence, which wanders, here, there, and yonder." *Id.*  (quoting *Lashley*, 66 F.4th at 177).

Although plaintiff Roe believes that the University should not have disciplined her after she voluntarily participated in its investigation of Doe's sexual assault, "the relevant inquiry is not whether [Marshall's] proffered reasons were wise, fair, or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004) (alteration in the original) (citation omitted).  To survive a summary judgment motion, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that the defendant's non-discriminatory reasons for its actions are false, and that the defendant intentionally discriminated against the plaintiff.  *See Lashley*, 66 F.4th at 176.  In this situation, plaintiff Roe failed to do so.

Put simply, even assuming *arguendo* that plaintiff Roe could establish a prima facie case of retaliation, summary judgment is nevertheless appropriate.  *See Hux v. City of Newport News, Va.*, 451 F.3d 311 (4th Cir. 2006) (assuming prima facie case when pretext was dispositive).  Having carefully assessed the issues and the record de novo, we are

20

constrained to rule that the district court did not err in granting Marshall's motion for summary judgment on Roe's retaliation claim.[6]

IV.

Pursuant to the foregoing, we reject each of plaintiff Roe's appellate contentions and affirm the judgment of the district court.

*AFFIRMED*

---

[6] Finally, to the extent Roe also argues on appeal that Marshall's conduct amounted to retaliation *per se*, such a contention was not presented to the district court and is therefore not properly before us. *See Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) ("Generally, issues that were not raised in the district court will not be addressed on appeal.").

QUATTLEBAUM, Circuit Judge, concurring:

I concur in the majority opinion. I write separately only about Part III, B of the opinion, which addresses Roe's Title IX retaliation claim. In that section, the majority affirms the district court by applying the well-known burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), concluding that no genuine issue of material fact exists for that retaliation claim. That approach accurately follows and even quotes Fourth Circuit cases. But with respect, I believe those cases misconstrue *McDonnell Douglas*. *See Hittle v. City of Stockton*, 145 S. Ct. 759, 760 (2025) (Thomas, J., with Gorsuch, J., joining, dissenting from the denial of certiorari); *Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1548–55 (2025) (Thomas, J., with Gorsuch, J. joining, concurring). In fact, while we have often applied *McDonnell Douglas* at summary judgment, at times we have cautioned that courts must "resist the temptation to become so entwined in the intricacies of the proof scheme that they forget that the scheme exists solely to facilitate determination of the 'ultimate question of discrimination *vel non*.'" *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) (quoting *Aikens*, 460 U.S. at 714); *see also Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 295 (4th Cir. 2010) ("By the time of the appeal especially, the issue boils down to whether the plaintiff has presented a triable question of intentional discrimination, and 'the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant.'" (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993))).

To me, in a Title IX case, we simply ask whether Roe pointed to record evidence that showed a genuine issue of material fact as to the elements of her claim. As the majority

22

notes, Roe must show "that [she] engaged in a protected activity under Title IX" and "that — as a result of [her] protected activity — [she] suffered an adverse action attributable to the defendant educational institution." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 694 (4th Cir. 2018). Under that approach, for the same reasons the majority ably explains, I would affirm the district court. Roe has not pointed to evidence that creates a genuine dispute of material fact as to whether she suffered an alleged adverse action from her protected activity.