[Cite as *Horne v. GE Aviation Sys., L.L.C.*, 2024-Ohio-3171.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ALEXANDRIA HORNE, | : | APPEAL NO. C-230522 TRIAL NO. A-2203771 |
| Plaintiff-Appellant, | : | |
| | : | *O P I N I O N.* |
| vs. | : | |
| | : | |
| GE AVIATION SYSTEMS LLC, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal: August 21, 2024

*Cooper Elliott, Barton R. Keyes* and *Jeffrey T. Kenney*, for Plaintiff-Appellant,

*Keating Muething & Klekamp PLL* and *Kasey L. Bond,* for Defendant-Appellee.

**CROUSE, Judge.**

{¶1}     In this appeal, plaintiff-appellant Alexandria Horne challenges the trial court's order compelling arbitration of her claim against defendant-appellee GE Aviation Systems LLC ("GE") for a violation of Ohio's Civil Rights Act under R.C. 4112.02 and staying further proceedings pending arbitration.

{¶2}     We hold that the trial court erred in compelling arbitration of Horne's claim. The arbitration agreement executed by the parties specifically excluded from arbitration disputes covered by the Franken Amendment. For the reasons set forth below, we hold that Horne's claim for discrimination based on sex in violation of R.C. 4112.02 is such a dispute. We accordingly reverse the trial court's order compelling arbitration and remand this cause for further proceedings consistent with the law and this opinion.

### I. Factual and Procedural Background

{¶3}     Horne was hired by GE as a software engineer in October of 2018. Upon the commencement of Horne's employment, she and GE entered into an agreement requiring the binding arbitration of certain claims arising out of or relating to her employment. This agreement was titled "Solutions," and it set forth an alternative-dispute-resolution procedure.

{¶4}     Section II.K of Solutions provided that certain covered claims had to be arbitrated and could not be litigated in any court. Section II.I provided that "covered claims" were:

> [A]ll claims that arise or arose out of or are or were related to an
> employee's employment or cessation of employment (whether asserted
> by or against the Company), where a court or agency in the jurisdiction

in question would otherwise have the authority to hear and resolve the claim under any federal, state or local (e.g., municipal or county) statute, regulation or common law.

The agreement specifically listed as a covered claim "[e]mployment discrimination and harassment claims, based on, for example age, race, sex (including pregnancy), sexual orientation, gender identity or expression, religion, national origin, veteran status, citizenship, handicap/disability, or other characteristic protected by law." Section II.I of Solutions.

{¶5} The agreement further stated that "Covered Claims do not include Excluded Claims (as defined in Section II.J.)." *Id.* As relevant to this appeal, Section II.J provided that an excluded claim included a claim that was not arbitrable as a matter of law and "[c]laims that may not be subject to a pre-dispute arbitration agreement, including * * * disputes covered by any government-contracts statute or Executive Order (such as the Franken Amendment * * * or Executive Order 13673, if the employee works for a business unit with a covered contract that requires such exclusion)." Thus, for purposes of this appeal, unless the claim was precluded by law from arbitration or covered by a government-contract statute or executive order, it was subject to binding arbitration under the Solutions agreement.

{¶6} Horne worked for GE for just over one year before her employment was terminated on December 18, 2019. Horne was told that the termination was due to her failure to follow change control and change management processes and for demonstrating a lack of candor on several occasions related to changes made to a software system. Believing GE's proffered explanation to be a pretext for sex discrimination, Horne filed a charge of discrimination and retaliation with the Ohio

Civil Rights Commission on June 5, 2020. On March 10, 2022, Horne received a "Notice of a Right to Sue" from the commission.

{¶7} Horne filed a complaint in the court of common pleas against GE on October 18, 2022. The complaint alleged that despite being competent at her job as a software engineer, she was treated differently than her similarly-situated male peers. The complaint contained the following allegations regarding this disparate treatment: that Horne's supervisor abused her verbally and in writing numerous times, but did not do so to her male coworkers who were also under his supervision, and that her supervisor's treatment of Horne worsened when she pointed out that he was creating a hostile work environment; that Horne was prohibited by her supervisor from bringing her laptop to team meetings, while male team members were allowed to do so; that Horne's supervisor told her that she was not allowed to ask a coworker questions about the development of a new application, but similarly-situated male team members were allowed to do so; and that Horne was denied a requested transfer to another team and told by her supervisor that he would block any transfer, despite his approval of the transfer of similarly-situated male employees.

{¶8} The complaint asserted a claim for a violation of Ohio's Civil Rights Act set forth in R.C. Ch. 4112. In support of this claim, Horne alleged that GE intentionally discriminated against her because of her sex and retaliated against her because she complained about disparate treatment based on sex.

{¶9} GE filed a motion to compel arbitration and to either dismiss Horne's claim or stay the claim pending arbitration. It contended that the parties had executed a binding arbitration agreement—Solutions—and that Horne's claim fell within the scope of the agreement. GE specifically argued that Horne's claim was a covered claim

pursuant to Section II.I because it was an employment-discrimination-and-harassment claim.

{¶10} Horne opposed the motion to compel arbitration. She argued that her claim against GE was not subject to arbitration because it was an "Excluded Claim" pursuant to Section II.J of Solutions. Horne contended that the claim was excluded because the Franken Amendment and federal Executive Order 13673 covered the dispute and because her claim was not arbitrable as a matter of law under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), which prohibited the forced arbitration of cases related to sexual-harassment disputes.

{¶11} The trial court, without explanation, granted GE's motion to compel arbitration and stayed the matter pending arbitration. Horne now appeals.

## II.  Motion to Compel Arbitration

{¶12} In a single assignment of error, Horne argues that the trial court erred in granting GE's motion to compel arbitration and staying the case.

{¶13} A trial court's order compelling arbitration and staying proceedings is generally reviewed for an abuse of discretion. *Carter v. Takoda Trails*, 2024-Ohio-911, ¶ 9 (1st Dist.). However, "whether a controversy falls under an arbitration agreement is a matter of contract interpretation and a question of law we review de novo." *Id*. The arguments in this case concern whether Horne's claim is a covered claim subject to binding arbitration under the Solutions agreement. As such, we conduct a de novo review.

{¶14} Horne contends that the trial court erred in granting the motion to compel arbitration because her claim, which she characterizes on appeal as one for sex-based discrimination and harassment, was excluded from forced arbitration under

the Solutions Agreement. Horne first contends, as she did in her opposition to GE's motion to compel, that her claim is excluded from arbitration because it is covered under a government-contracts statute, specifically the Franken Amendment, as well as Executive Order 13673.[1]

{¶15} The Franken Amendment is codified in 48 C.F.R. 222.7402. This regulation provides in relevant part that:

Departments and agencies are prohibited from using funds appropriated or otherwise made available by the Fiscal Year 2010 Defense Appropriations Act (Pub. L. 111-118) or subsequent DoD appropriations acts for any contract (including task or delivery orders and bilateral modifications adding new work) in excess of $ 1 million, unless the contractor agrees not to—

(1) Enter into any agreement with any of its employees or independent contractors that requires, as a condition of employment, that the employee or independent contractor agree to resolve through arbitration—

(i) Any claim under title VII of the Civil Rights Act of 1964; or

(ii) Any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional

---

[1]Executive Order 13673 provided in relevant part that "Agencies shall ensure that for all contracts where the estimated value of the supplies acquired and services required exceeds $ 1 million, provisions in solicitations and clauses in contracts shall provide that contractors agree that the decision to arbitrate claims arising under title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment may only be made with the voluntary consent of employees or independent contractors after such disputes arise." Because Horne's argument with respect to the Franken Amendment is dispositive of this appeal, we need not consider her argument pertaining to Executive Order 13673, which we note was revoked by Executive Order 13782. *See Ashford v. Pricewaterhousecoopers, LLP*, 2018 U.S. Dist. LEXIS 119594, *18 (D.S.C. July 18, 2018), *overruled on other grounds*, 954 F.3d 678 (4th Cir. 2020).

distress, false imprisonment, or negligent hiring, supervision, or retention[.]

48 C.F.R. 222.7402(a)(1). Essentially, the Franken Amendment provides that a defense contractor receiving a government contract in excess of one million dollars cannot enter into an agreement with its employees that requires an employee to resolve certain claims through arbitration, including tort claims that are related to or arise out of sexual assault or harassment.

{¶16} According to Horne, her claim arises out of and relates to sexual harassment, and is therefore covered under the Franken Amendment. GE does not dispute that, as a federal contractor, it is subject to the Franken Amendment. It disputes, however, the assertion that Horne's claim is covered under the amendment.

{¶17} GE argues that Horne's claim is not one "related to or arising out of sexual assault or harassment," but rather is a claim for gender discrimination. In support of its argument that Horne's complaint asserted a claim for gender discrimination, GE relies on language from the introductory paragraph of the complaint stating "because of her gender, her supervisor treated her less favorably than similarly situated male employees" and "Ms. Horne asserts claims for gender discrimination under Ohio law."

{¶18} While, as noted by GE, Horne described her claim as one for gender discrimination in the complaint's introductory paragraph, she described the claim in the body of the complaint as one for discrimination and disparate treatment based on sex. To determine whether Horne has asserted a tort claim "related to or arising out of sexual assault or harassment" we must examine both the definition of a claim for sexual harassment and the actual allegations set forth in support of Horne's claim.

{¶19}  Horne asserted a claim for a violation of R.C. 4112.02, which provides that it is an unlawful discriminatory practice for an employer, "because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.02(A).

{¶20}  In *Hampel v. Food Ingredients Specialties*, 89 Ohio St.3d 169 (2000), the court discussed discrimination claims under R.C. 4112.02. The court first explained that a violation of R.C. 4112.02 for sex-based discrimination could be established by proving either of two types of sexual harassment: "quid pro quo" harassment, in which the harassment is directly linked to the grant or denial of a tangible economic benefit, or "hostile-environment" harassment, in which the harassment creates a working environment that is hostile or abusive but does not affect economic benefits. *Id*. at 176.

{¶21}  The court also discussed whether harassing conduct needed to have a sexual element for a plaintiff to proceed on a claim for sexual harassment. Answering this question in the negative, it held that "[h]arassing conduct that is simply abusive, with no sexual element, can support a claim for hostile-environment sexual harassment if it is directed at the plaintiff because of his or her sex. However, harassment is not automatically discrimination because of sex merely because the words used have sexual content or connotations." *Id*. at paragraph four of the syllabus. In support of this holding, the court explained:

Harassment "because of * * * sex" is the *sine qua non* for any sexual harassment case. "But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale [v. Sundowner Offshore Serv., Inc.],* 523 U.S. [75,] 80, 118 S. Ct. [998,] 1002, 140 L. Ed. 2d [201,] 208 [(1998)]. As Professor Larson points out, the term "sexual," as used to modify harassment, "can refer both to sex as the immutable gender characteristic and to sex as describing a range of behaviors associated with libidinal gratification." 3 Larson, Employment Discrimination (2 Ed.2000) 46-34, Section 46.03[4]. Thus, actions that are simply abusive, with no sexual element, can support a claim for sexual harassment if they are directed at an employee because of his or her sex. Simply put, "harassment alleged to be because of sex need not be explicitly sexual in nature." *Carter v. Chrysler Corp.* (C.A.8, 1999), 173 F.3d 693, 701.

(Emphasis sic.) *Id.* at 178-179.

{¶22} *Hampel* clearly states that sexual harassment can occur when the harassment is directed at an employee because of her sex, and does not require comments and behavior to be explicitly sexual in nature. Horne's complaint contains allegations that she was treated differently and subject to certain conditions because of her sex, which, under *Hampel*, is sexual harassment. *See id.*

{¶23} GE argues that any reliance on *Hampel* is misplaced because the plaintiff in *Hampel* alleged a harassment claim and Horne alleged a discrimination claim. GE contends that the plaintiff in *Hampel* did not allege that he suffered an adverse employment action and asserted a claim for hostile-work-environment

harassment, whereas Horne's claim is distinguishable because she alleged a claim for disparate treatment and that she suffered adverse employment actions. We are not persuaded.

**{¶24}** Both the plaintiff in *Hampel* and Horne alleged a violation of R.C. 4112.02, which is a discrimination claim. As the *Hampel* court explained, discrimination under R.C. 4112.02 may be established by proving either of two specified types of harassment: quid pro quo or hostile work environment. *Id.* at 176. Hampel relied on the creation of a hostile work environment to prove his claim. *Id.* at 178. And while GE argues that Horne has only asserted that she suffered an adverse employment action (which the *Hampel* court would classify as quid pro quo harassment), we do not read Horne's complaint so narrowly. In our view, Horne has alleged both types of harassment in her complaint. The complaint alleged that her supervisor's disparate treatment created a hostile work environment, and that she suffered adverse employment actions, including termination. The complaint contained multiple examples of the hostile work environment that Horne allegedly experienced. This included being subjected to both verbal and written abuse from her supervisor and being prohibited from asking questions of a coworker regarding the development of a new application, while male coworkers were not subjected to such abuse or prohibited from asking such questions.

**{¶25}** We accordingly hold that Horne's complaint asserted a claim for a "tort related to or arising out of sexual assault or harassment" and was covered under the Franken Amendment. *See Ridley v. Fed. Express,* 2004-Ohio-2543, ¶ 89 (8th Dist.) (holding that a claim for a violation of R.C. 4112.02 is a tort action).

{¶26}  GE contends that even if Horne asserted a claim for sexual harassment, the Franken Amendment is inapplicable to her claim due to the Amendment's "carve-out provision." The Franken Amendment provides that it applies to "[a]ny tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention." 48 C.F.R. 222.7402(a)(1). GE contends that this "carve out" provision applies to intentional tort claims related to sexual harassment and not to sexual harassment itself. In support of this assertion, GE relies on *C.D. v. Univ. of Southern California*, 2022 Cal.Super. LEXIS 8603 (May 2, 2022), a trial court case from California.

{¶27}  GE's reliance on *C.D.* is faulty. A reading of *C.D.* reveals that the court was not discussing the Franken Amendment when it referenced a "carve out" provision, but rather was discussing a "carve out" provision in the parties' arbitration agreement. The plaintiff in *C.D.* had argued that the arbitration agreement "carves out 'tort claims (e.g., assault and battery, intentional infliction of emotional distress, false imprisonment or negligent hiring, supervision or retention) if they are related to sexual assault or harassment.'" *Id.* at 15. In rejecting this argument, the court held that "the carve-out provision applies to intentional tort claims related to sexual harassment, and not sexual harassment itself, which is covered by the arbitration agreement." *Id.* at 16-17.

{¶28}  Even if *C.D.* could be read to provide support for GE's position, we find an argument that the Franken Amendment applies to intentional tort claims related to sexual harassment and not to sexual harassment itself to be without merit and illogical. Because it makes no sense that the Amendment would apply to tort claims

related to sexual harassment, but not to sexual harassment itself, we do not read the language of the Franken Amendment to exclude an actual claim for sexual harassment or discrimination based on sex.

{¶29} Here, Horne has asserted a claim for sex-based discrimination in violation of R.C. 4112.02, which is a tort related to or arising out of sexual harassment. As such, it is covered under the Franken Amendment.

{¶30} GE raises one final argument in support of its contention that Horne's claim is not an excluded claim under Section II.J of Solutions. It argues that the Franken Amendment does not provide any substantive right to a plaintiff seeking to avoid arbitration, but rather precludes the government from doing business with contractors who mandate arbitration of certain claims as a condition of employment. In support, GE cites *Talhouk v. RMR Group LLC*, 2023 U.S. Dist. LEXIS 50489 (N.D.Ga. Mar. 23, 2023), and *Lee v. Google, Inc.*, 2018 Cal.Super. LEXIS 114049 (Sep. 14, 2018).

{¶31} In *Talhouk*, the court considered a similar argument and held that "the Franken Amendment does not bar or void this otherwise indisputably valid arbitration agreement." The court stated in explanation:

By its plain language, the statute proscribes the actions of the *government*. The prohibitory language begins with the phrase "***Departments and agencies are prohibited*** [from paying funds to contractors who require or enforce arbitration as to Title VII claims]." 48 C.F.R. § 222.7402 (emphasis added). In other words, this is an appropriations restriction on the Executive Branch's ability to spend funds. While the obvious intent behind this Amendment was to

12

effectuate beneficial employment reforms, it does so indirectly, through a restriction on what entities may receive government funds, not through a direct regulatory prohibition on the conduct of those contractors.

(Emphasis sic.) *Talhouk* at *13-14.

{¶32} In *Lee*, the court reached the same conclusion, holding that the Franken Amendment "does not provide that arbitration provisions executed or enforced in violation of this promise are void, nor does it establish a remedy for violations in favor of employees." *Lee* at 11; s*ee also Schweyen v. Univ. of Montana-Missoula*, 2022 U.S. Dist. LEXIS 81810, *8-9 (D.Mt. May 5, 2022) (holding that the Franken Amendment does not provide a remedy for avoiding an arbitration clause).

{¶33} While GE's assertion that the Franken Amendment itself does not provide any substantive right to a plaintiff seeking to avoid arbitration is correct, GE ignores one dispositive fact in this case that renders the preceding case law inapplicable: GE, by including in Section II.J of Solutions a provision that an excluded claim is one that is covered under the Franken Amendment, elected to remove such claims from mandatory arbitration. Here, Horne is not relying on a remedy under the Franken Amendment to avoid arbitration of her claim; rather, she is relying on the language in Solutions in which GE agreed that claims covered under the Franken Amendment would not be subject to arbitration.

{¶34} Because Horne's claim involved a dispute covered by the Franken Amendment, it was an excluded claim under Section II.J of Solutions that was not subject to arbitration. We accordingly sustain Horne's assignment of error and hold that the trial court erred in granting GE's motion to compel arbitration. Because our

resolution of Horne's argument with respect to the Franken Amendment is dispositive of this appeal, we need not address her argument that her claim was excluded from arbitration because the EFAA prohibited the forced arbitration of cases related to a sexual-harassment dispute.

### III. Conclusion

{¶35}   The trial court erred in granting GE's motion to compel arbitration and staying the case. Its judgment is reversed and this cause is remanded for proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

**BOCK, P.J.,** and **KINSLEY, J.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.