[Cite as *Hansbrough v. Marshall Dennehey, P.C.*, 2026-Ohio-657.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

KEITH HANSBROUGH,                      :

    Plaintiff-Appellee,              :

                                No. 115312

    v.                               :

MARSHALL DENNEHEY, P.C., ET AL.,  :

    Defendants-Appellants.           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:**  February 26, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-109289

---

### *Appearances:*

Spitz, The Employee's Law Firm, and Fred M. Bean, *for appellee.*

Bricker Graydon LLP, Matthew D. Gurbach, and Erin E. Butcher, *for appellants.*

DEENA R. CALABRESE, J.:

{¶ 1} Defendants-appellants Marshall Dennehey, P.C., and Leslie M. Jenny ("Marshall Dennehey," "Jenny," or collectively "appellants") appeal the judgment of the trial court denying their motion to compel arbitration of this employment-discrimination action.  This case appears to be a matter of first impression in an

Ohio state appellate court regarding the application of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "EFAA"), 9 U.S.C. 401-402. Following a thorough review of both the complaint filed by plaintiff-appellee Keith Hansbrough ("Hansbrough") and applicable law, we affirm the trial court's judgment and remand the case for further proceedings.

## I. Procedural History and Basic Facts

{¶ 2} Hansbrough commenced the underlying employment-discrimination action on December 23, 2024, by filing a complaint against the law firm of Marshall Dennehey and Jenny. The factual allegations underlying the complaint will be discussed in more detail in connection with appellants' sole assignment of error. Briefly put, Hansbrough, who is male, joined the firm's Cleveland office as a shareholder in 2014. In his complaint, he alleged discriminatory treatment, sexual harassment, and retaliation beginning in 2018 and continuing to the date of his alleged constructive discharge in July 2023. The complaint identifies Jenny, who is female, as the managing attorney of Marshall Dennehey's Cleveland office.

{¶ 3} Hansbrough's 207-paragraph complaint contained five causes of action, each premised on alleged violations of Ohio's employment-discrimination statute, R.C. 4112.01 et seq., specifically:

Count I: Hostile work environment sexual harassment and constructive discharge based on sexual harassment (against Marshall Dennehey only);

Count II: Retaliation in violation of R.C. 4112.02(I) (against all defendants);

Count III: Post-employment retaliation in violation of R.C. 4112.02(I) (against all defendants);

Count IV: Gender discrimination in violation of R.C. 4112.01 et seq. (against Marshall Dennehey only); and

Count V: Unlawful aiding, abetting, and inciting of discrimination and retaliation (against Jenny only).

{¶ 4} Hansbrough explicitly framed each count as both "based upon unlawful actions that occurred after March 10, 2022" and "based upon unlawful actions that relate to a sexual harassment dispute and/or a sexual assault dispute." (Complaint at ¶ 142-143, 160-161, 175-176, 182-183, and 199-200.)[1]

{¶ 5} Appellants waived service pursuant to Civ.R. 4.7.[2] On February 28, 2025, they filed a combined motion to dismiss the complaint and, in the alternative, to compel arbitration. Appellants argued that Hansbrough's complaint should be dismissed in its entirety or his claims "winnowed," with any surviving causes of action sent to arbitration:

Marshall Dennehey and Ms. Jenny do not waive their right to seek an order compelling arbitration of this matter, for all the reasons stated below. However, legally and logically, it makes sense to present first the argument supporting their request that the Court dismiss the case in whole or in part, which, if it does not result in an order dismissing

---

[1] These prefatory allegations appear designed to ensure that the complaint falls within the ambit of the EFAA, which became effective on March 3, 2022.

[2] The record item corresponding to the waiver form, both as imaged on the clerk's website and as transmitted by the clerk with the physical file, consists of blank pages. Neither service of process nor the timeliness of appellants' response to the complaint, however, are at issue in this appeal. We therefore decline to order supplementation of the record.

the entire case, will winnow the case greatly and crystalize the basis on which the Court should compel arbitration.

(Appellants' motion at p. 2.)  Appellants contemporaneously moved for leave to file the operative arbitration agreements (contained within Hansbrough's shareholder agreement and his shareholder employment agreement) under seal.

{¶ 6} Hansbrough opposed appellants' motion on March 11, 2025. Appellants filed their reply brief on March 18, 2025.  The parties later stipulated to the authenticity and admissibility of the shareholder and employment agreements, which were formally filed under seal on May 15, 2025.

{¶ 7} The parties consented to having the matter heard on briefs.  On May 27, 2025, the trial court docketed an order to that effect, noting that there were no factual issues to be resolved.  Specifically, the trial court noted that the parties agreed that an arbitration agreement existed and that "the only issues that appear to be in dispute are: (1) whether defendants waived any perceived right to arbitration; and (2) whether plaintiff's claims are subject to arbitration in light of 9 U.S.C. § 402 (the 'Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021')."

{¶ 8} On June 13, 2025, the trial court issued its opinion.  It first denied appellants' Civ.R. 12(B)(6) motion to dismiss, concluding:

> In consideration of the motion to dismiss, the court has presumed all factual allegations of the complaint as true and has viewed all facts and has . . . drawn all inferences therefrom in the light most favorable to the non-movant.  After careful consideration of the parties' briefs and arguments, and upon review of the applicable law, the motion to dismiss pursuant to Civ. R. 12(b)(6) is not well-taken, and is denied. The facts of plaintiff's complaint state a cognizable claim upon which relief can be granted, and the averments therein satisfy the liberal

pleading requirements of Civ. R. 8(a). Accordingly, defendants' motion is denied in this respect.

The trial court next turned to the parties' agreement to arbitrate disputes. It acknowledged the soundness of appellants' arguments concerning Ohio's strong public policy favoring arbitration. It further expressly found that "the clear and unambiguous language of the relevant agreements plainly indicate that the parties intended to submit any dispute between and among them to binding arbitration."

{¶ 9} Having found that the parties agreed to arbitration, the trial court progressed to Hansbrough's counterarguments, which are central to this appeal. Hansbrough argued both that appellants had waived their right to seek arbitration by filing a Civ.R. 12(B)(6) motion to dismiss and that arbitration was barred by the EFAA. The trial court rejected Hansbrough's waiver argument, noting, inter alia, that appellants' motion to compel arbitration was incorporated into their first responsive pleading.

{¶ 10} The trial court, however, found merit to Hansbrough's argument that any agreement to arbitrate was unenforceable under the EFAA. Acknowledging that there appeared to be no Ohio cases addressing the applicability of the EFAA, the court turned to federal case law. It rejected appellants' argument that all of Hansbrough's allegations of sexual harassment were tied to the 2018 timeframe, therefore predating the effective date of the EFAA, March 3, 2022:

> Although the court agrees that the EFAA does not apply retroactively, and that the EFAA would not apply to any alleged act of sexual harassment in the summer of 2018, the court disagrees with the assertion that no specific claims for sexual harassment occurred on or

after the EFAA effective date. The court has stated supra that plaintiff has already presented a cognizable claim for relief under Civ. R. 8(A) and Civ. R. 12. Specifically, under the liberal notice pleadings requirements of Civ. R. 8(A) and having viewed all factual allegations of the complaint as true and drawing all inferences therefrom in the light most favorable to plaintiff, ¶¶ 60-62, 72-78, 85-86 of plaintiff's complaint allege conduct occurring on or after the EFAA effective date that could constitute sexual harassment under Ohio law.

. . .

[B]ased on the multitude of decisions cited by plaintiff, it is clear that . . . plaintiff's count for sexual harassment is covered under the EFAA.

{¶ 11} Next, the trial court further found that pursuant to the federal cases it reviewed, "[B]ecause sexual harassment is alleged in the complaint, the EFAA exempts plaintiff's entire case from arbitration." Finally, the trial court found that according to section 402(B) of the EFAA, the court is required to decide whether the EFAA applies to a dispute over arbitrability even if the parties' arbitration agreement assigns this threshold issue to the arbitrator.

{¶ 12} Accordingly, the trial court denied appellants' motion to compel arbitration. This timely appeal followed.

## II. Assignment of Error

{¶ 13} Appellants present a single assignment of error for our review:

The trial court erred by denying Defendants' motion to compel arbitration. That motion invoked a valid and enforceable arbitration clause governing the parties' employment relationship. The clause covers all claims asserted in this case. By refusing to enforce it, the court disregarded controlling federal and state law favoring arbitration, misconstrued a recently enacted federal statute, and failed to honor the parties' contractual agreement.

{¶ 14} We find no merit to the assignment of error and therefore affirm the trial court's judgment denying appellants' motion to compel arbitration.

## III. Analysis

### A. Standard of Review — Motions to Compel Arbitration

{¶ 15} This court recently addressed the standard of review of trial-court rulings on motions to compel arbitration:

> We review a trial court's ruling on a motion to stay and compel arbitration under a de novo standard. *Wisniewski v. Marek Builders, Inc.*, 2017-Ohio-1035, ¶ 5 (8th Dist.), citing *McCaskey v. Sanford-Brown College*, 2012-Ohio-1543 (8th Dist.). But factual findings of the trial court under this standard of review are to be given deference. *Gibbs v. Firefighters Community Credit Union*, 2021-Ohio-2679, ¶ 13 (8th Dist.), citing *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938, ¶ 38.

*Yoby v. Cleveland*, 2025-Ohio-5853, ¶ 12 (8th Dist.) ("*Yoby III*").

{¶ 16} In the present appeal, Hansbrough urges that we afford some deference to the trial court and apply an abuse-of-discretion standard. *See Sebold v. Latina Design Build Group, L.L.C.*, 2021-Ohio-124, ¶ 10 (8th Dist.), citing *Seyfried v. O'Brien*, 2017-Ohio-286, ¶ 18 (8th Dist.). *Yoby III*, however, makes clear that such deference is to be afforded only to factual findings. The present case involves only questions of law. All parties agree that Hansbrough's employment-law claims fall within the scope of the arbitration agreement. The trial court did not conduct a fact-finding hearing regarding, for example, the making of the arbitration agreement.

{¶ 17} Indeed, in a journal entry noting that no hearing was required, the trial court cited earlier proceedings in the *Yoby* litigation and wrote that "there appears

to be no issue of fact which would require the court to hold an evidentiary hearing on the matter."[3] The trial court further noted that the parties had consented to have the matter heard on briefs.

{¶ 18} The trial court's inquiry, therefore, was instead limited to (1) the issue of waiver, which required only reference to the procedural posture of the case (i.e., what pleadings appellants had filed) and applicable law governing waiver or forfeiture; and (2) the application of the EFAA, which required only the review of Hansbrough's complaint under applicable law. Here, we are not reviewing the trial court's *denial* of appellants' Civ.R. 12(B)(6) motion. Our review, however, requires scrutiny of the complaint in light of relevant law. The review of a complaint, typically pursuant to a Civ.R. 12(B)(6) motion, involves no factual findings, tests the sufficiency of the complaint, and is de novo. *See, e.g., Bykova v. Cleveland*, 2025-Ohio-3285, ¶ 12 (8th Dist.); *Horn v. Cherian*, 2023-Ohio-931, ¶ 11 (8th Dist.); *Michelson v. Volkswagen Aktiengesellschaft*, 2018-Ohio-1303, ¶ 5 (8th Dist.).

---

[3] "The Ohio Arbitration Act allows for direct enforcement of arbitration agreements through an order to compel arbitration under R.C. 2711.03 or indirect enforcement through an order staying proceedings under R.C. 2711.02, or both." *Yoby v. Cleveland*, 2023-Ohio-2180, ¶ 13 (8th Dist.) ("*Yoby II*"), citing *Maestle v. Best Buy Co.*, 2003-Ohio-6465, ¶ 18, and *Brownlee v. Cleveland Clinic Found.*, 2012-Ohio-2212, ¶ 11 (8th Dist.). Where, as here, a party files a motion to compel pursuant to R.C. 2711.03, the trial court must take evidence if "a question of fact arises" concerning "the existence of the contract containing the arbitration clause at issue." *Yoby II* at ¶ 17. In other words, "[a]ccording to the specific language of R.C. 2711.03, *factual issues* regarding the existence of an arbitration agreement or its enforcement are tried to the court unless either party requests a jury trial." (Emphasis added.) *Squires Constr. Co. v. Thomas*, 2008-Ohio-1406, ¶ 22 (8th Dist.). The present action does not involve a question as to the existence of an agreement to arbitrate. It involves only a legal analysis of whether the EFAA applies in light of the allegations in Hansbrough's complaint, which must be accepted as true.

Finally, at least one federal appellate court has expressly reviewed the issue of the EFAA's application under a de novo standard because it requires statutory interpretation. *Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 245, fn. 5 (3d Cir. 2025). In light of these considerations, we review the EFAA's application to this case de novo.

## B. Application of the EFAA to the Present Case

### 1. Standard for Applicability of the EFAA

{¶ 19} As the trial court noted, this appears to be a case of first impression with respect to the EFAA's application to an Ohio employment dispute litigated in state court. We agree; we have been unable to locate an Ohio appellate or common pleas court case discussing the application of the EFAA to any dispute. Before turning to the merits, therefore, we address the standard for determining whether the EFAA applies in a given case.

{¶ 20} Several federal courts have provided guidance on the EFAA's application. Very recently, a federal district court in California explained that both in the Ninth Circuit and elsewhere, "[t]here is a split among federal district courts . . . about the appropriate standard for determining 'the allegations that are necessary to invoke the EFAA in the first place and to determine whether the statute is applicable to the case.'" *MacKay v. PetSmart, Inc.*, 2025 U.S. Dist. LEXIS 168963, *10-11 (C.D.Cal. Dec. 2, 2025), quoting *Diaz-Roa v. Hermes Law, P.C.*, 757 F.Supp.3d 498, 533 (S.D.N.Y. 2024). The *MacKay* Court explained the split as follows:

Some "[c]ourts evaluate EFAA arguments using the pleading standards of Federal Rule of Civil Procedure 12(b)(6)." *Arouh v. GAN Ltd.*, No. 23-cv-02001-FWS, 2024 U.S. Dist. LEXIS 53039, at *6 (C.D.Cal. Mar. 22, 2024); *see also* [*Yost v. Everyrealm, Inc.*, 657 F.Supp.3d 563, 577 (S.D.N.Y. 2023)]. Other courts apply a more liberal standard according to which a plaintiff needs only to "plead nonfrivolous claims relating to sexual assault or to conduct alleged to constitute sexual harassment, with the sufficiency of those claims to be reserved for proper merits adjudication." *Diaz-Roa*, 757 F.Supp.3d 498, at *14; *see also Turner v. Tesla, Inc.*, 686 F.Supp.3d 917, 926 (N.D.Cal. 2023) (omitting reference to Rule 12(b)(6)).

*MacKay* at *11.

{¶ 21} Unsurprisingly, Hansbrough urges us to use the less stringent *Diaz-Roa* standard, i.e., to evaluate whether his claims relating to sexual harassment are nonfrivolous. Given the split of authority in federal courts and the lack of any Ohio jurisprudence on the issue, as well as Ohio's less stringent notice-pleading standard under Civ.R. 12(B)(6), we will first evaluate the EFAA's applicability to this dispute under Ohio Civ.R. 12(B)(6) pleading standards. If Hansbrough's claims survive that analysis, as they did before the trial court, they are ipso facto nonfrivolous, and we need not determine whether the lower *Diaz-Roa* standard should be applied.

### 2. Public Policy and the EFAA Generally

{¶ 22} "There is a strong public policy in Ohio favoring arbitration of disputes." *Yoby III* at ¶ 12, citing *Sebold v. Latina Design Build Group, L.L.C.*, 2021-Ohio-124, ¶ 8 (8th Dist.). "Ohio courts have recognized a 'presumption favoring arbitration' that arises 'when the claim in dispute falls within the scope of the arbitration provision.'" *Sebold* at ¶ 8, quoting S*eyfried v. O'Brien*, 2017-Ohio-286, ¶ 17 (8th Dist.), citing *Austin v. Squire*, 118 Ohio App.3d 35, 37 (9th Dist. 1997).

{¶ 23} At the trial-court level, appellants moved to compel arbitration pursuant to the Ohio Arbitration Act, R.C. 2711.03(A), while also arguing that the Federal Arbitration Act ("FAA") applied to the parties' dispute. This is consistent with allegations in the complaint. Hansbrough alleged that Marshall Dennehey is a "foreign professional corporation and law firm . . . headquartered in Pennsylvania . . . with a branch or office in Cleveland Ohio." (Complaint at ¶ 2-3.) Appellees themselves expressly argue that "the FAA governs Marshall Dennehey's employment contracts because the firm operates in interstate commerce." (Appellant's brief at p. 7.) Where a party has relied on both the Ohio Arbitration Act and the FAA in seeking to compel arbitration, this court has previously addressed the arguments together. *See, e.g., Sinley v. Safety Controls Technology, Inc.*, 2020-Ohio-4068, ¶ 13 (8th Dist.) (Where party separately assigned error under Ohio Arbitration Act and FAA, this court indicated it would "consider these assigned errors together because they are related."), *aff'd*, 2022-Ohio-4153. As with the Ohio Arbitration Act, gallons of ink have been devoted to the maxim that the FAA "manifests 'a liberal federal policy favoring arbitration agreements.'" *Id.* at ¶ 14, quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). *See also Wright State Univ. v. Fraternal Order of Police*, 2017-Ohio-854, ¶ 11 (2d Dist.), quoting *Cincinnati v. Queen City Lodge No. 69*, 2005-Ohio-6225, ¶ 14 (1st Dist.) (Ohio "'public policy favors arbitration.'"); *Memmer v. United Wholesale Mtge., LLC*, 135 F.4th 398, 406 (6th Cir. 2025) ("'"The FAA expresses a strong public policy favoring arbitration of a wide class of disputes."'"), quoting *Walker v. Ryan's*

*Family Steak Houses, Inc.*, 400 F.3d 370, 376 (6th Cir. 2005), quoting *Cooper v. MRM Invest. Co.*, 367 F.3d 493, 498 (6th Cir. 2004).

{¶ 24} Accordingly, "both the FAA and Ohio's Arbitration Act provide that a court shall stay proceedings and compel arbitration when 'an issue is referable to arbitration under an agreement in writing for arbitration.'" *Sinley* at ¶ 15, quoting R.C. 2711.02. *See also* R.C. 2711.03; *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 624 (6th Cir. 2001), citing 9 U.S.C. 3 and 4. Here, both sides agree that the arbitration agreements were written to cover all disputes between the parties, including employment-discrimination claims. Under normal circumstances, this would have ended the trial court's inquiry.

{¶ 25} "'Like any statutory directive,' however, the FAA's policy favoring arbitration 'may be overridden by a contrary congressional command.'" *Mera v. SA. Hospitality Group, LLC*, 2025 U.S. Dist. LEXIS 225349, *15-16 (S.D.N.Y. Nov. 14, 2025), quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). In other words, public policy favors arbitration – except when it does not. The EFAA is exactly such a contrary congressional command; it carves out an exception to the general public policy favoring arbitration. The EFAA amended the FAA, providing in pertinent part:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal,

or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. 402(a). In short, the EFAA "allows an individual claiming sexual harassment or assault to elect judicial resolution, rather than arbitral resolution of their claims, even if the individual previously agreed to arbitrate such claims if they arose." *Memmer* at 406. As the *Mera* Court wrote:

> In amending the FAA to render unenforceable arbitration provisions that would otherwise apply to claims premised on "sexual harassment" or "sexual assault," the Ending Forced Arbitration Act cuts backs [sic] on the prior federal policy strongly favoring arbitration and the enforcement of arbitration agreements.

*Mera* at *16. As another federal district court explained:

> [T]he statute's broad stated purposes [are] to "prohibit the enforcement of mandatory, pre-dispute arbitration . . . provisions in cases involving sexual assault or sexual harassment," H.R. Rep. No. 117-234, at 3 (2022), "restore access to justice for millions of victims of sexual assault or harassment who are currently locked out of the court system," *id.* at 4, and allow "others [to] learn[] of widespread misconduct," *id.* at 5. Interpreting the EFAA as reaching local laws aligns with Congress's judgment that sexual assault and harassment cases belong, as a category, in courts—and not in "secretive" arbitration proceedings that "often favor[] the company over the individual." *Id.* at 4.

*Johnson v. Everyrealm, Inc.*, 657 F. Supp.3d 535, 552, fn. 14 (S.D.N.Y. 2023).

{¶ 26} Reviewing the trial court's decision de novo, we agree with both its approach to determining whether the EFAA applies to this action and with its ultimate conclusion.

{¶ 27} The EFAA became effective March 3, 2022. In *Memmer*, 135 F.4th 398 (6th Cir. 2025), the Sixth Circuit found that the EFAA "applies to *claims that*

*accrue* after its date of enactment and to *disputes*, understood as controversies between the parties, that *arise* after that date." (Emphasis added.) *Memmer* at 403. The parties in that case had agreed that Memmer alleged sexual harassment within the meaning of the EFAA but disputed "whether the events occurred at the right time." *Id.*

{¶ 28} In *Memmer*, all of the conduct alleged to constitute sexual harassment occurred prior to the effective date of the EFAA. Indeed, Memmer had quit her job prior to the EFAA's effective date. *Id.* She filed her administrative claim and lawsuit, however, after the EFAA's effective date. *Id.*

{¶ 29} The Sixth Circuit, aided by previous interpretations by other courts such as the Eighth, Third, and Second Circuits, parsed two nouns ("dispute" and "claim") and two verbs ("arises" and "accrues") to ultimately find that even though every instance of alleged sexual harassment in Memmer's complaint predated the effective date of the EFAA, its bar to arbitration might apply to her case. It found that the EFAA applied to either (1) claims that accrue after the enactment date of March 3, 2022, or (2) disputes that arise after that date, even if the underlying claim had accrued earlier.

{¶ 30} To determine when a "dispute arises" under the EFAA, the *Memmer* Court explained, "The relevant question is when the parties became adverse to one another." *Memmer*, 135 F.4th at 409 (6th Cir. 2025), citing *Famuyide v. Chipotle Mexican Grill, Inc.*, 111 F.4th 895, 897-898 (8th Cir. 2024). "Depending on the facts," therefore, "a dispute could arise when an injured party sends the defendant a

demand letter, files an administrative charge, requests arbitration, commences a lawsuit, or some other event occurs." *Memmer* at 409, citing *Famuyide* at 897-898. The Sixth Circuit explained:

> In many cases, the dispute will arise after the claim accrues. For example, a sexual-harassment claim may accrue when one employee makes an inappropriate remark to another, but the dispute may not arise until the employer resists the employee's complaints. But the converse could also be true. A dispute may arise between the parties about the harassment, but if the harassment continues, a continuing violation, such as a hostile work environment claim, might subsequently accrue due to the later events. *See Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 85-87 (2d Cir. 2024). Ultimately, when a dispute arises is a fact-dependent inquiry that can be determined in the context of each case.

*Memmer* at 409. The Sixth Circuit remanded the case to the district court to determine "[w]hen the dispute — the controversy between the parties — arose under the facts of this case[.]" *Memmer* at 413.

{¶ 31} In the present case, appellants contend, and Hansbrough concedes, that many of the facts alleged in his complaint are premised on conduct perpetrated by a male partner at the firm (Andrew Wargo) in 2018, prior to the EFAA's effective date. Unlike in *Memmer*, however, this case does not require parsing the language of the EFAA, distinguishing between claims and disputes, or a remand to the trial court to determine when the relevant dispute arose. Hansbrough was still employed at Marshall Dennehey when the EFAA took effect. More importantly, unlike in *Memmer*, a review of the complaint confirms that Hansbrough alleges that Jenny engaged in sexual harassment, as defined by the Ohio Supreme Court, *after* the effective date of the EFAA. Therefore, whether framed as "claims that accrued" or

"disputes that arose," at least some of his allegations relate to conduct alleged to have occurred after the effective date of the EFAA.

{¶ 32} For example, the complaint alleges that "[a]t several points in 2023, Jenny herself engaged in . . . direct sexual harassment against Hansbrough," including allegedly telling him that "me-too does not apply to men" and, with respect to his previous complaints of sexual harassment, that "people who can't let things go and keep talking about them usually enjoyed them." (Complaint at ¶ 72-74.) Also on and after March 10, 2022, Jenny allegedly taunted Hansbrough about previous instances of purported same-sex harassment that he claimed were never remedied, peppering him with remarks such as "Andy says hello" and "do you miss Andy working here[?]" (Complaint at ¶ 76-77.) Accordingly, in Count 1 of his complaint, Hansbrough specifically alleged that on or after March 10, 2022, he "was subjected to unwelcomed sexual harassment . . . including by Jenny," that this "unwelcomed sexual harassment . . . was based on his gender," and that the sexual harassment "was sufficiently severe or pervasive to affect the terms, conditions or privileges of his employment." (Complaint at ¶ 142 and 145-146.)

{¶ 33} These allegations explicitly pertain to acts allegedly committed by Jenny after the effective date of the EFAA. With respect to the EFAA's application, therefore, the only issue is whether the complaint alleges a "sexual harassment dispute." The EFAA provides the applicable definition: "The term 'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or *State law*." (Emphasis

added.)  9 U.S.C. 401(4).  We emphasize "State law" because we view it as disposing of appellants' core argument.  The thrust of appellants' argument is that with respect to acts occurring after the EFAA's effective date, Hansbrough has alleged "merely . . . a generalized unsupportive employment environment, not a sexual harassment . . . dispute." (Appellants' brief at p. 14.)  They also argue that Jenny's remarks and behavior were not sufficiently sexually charged or that Hansbrough's claims involving Jenny and the firm should otherwise be cordoned off into categories such as sex discrimination or retaliation rather than sexual harassment.

{¶ 34} Hansbrough's complaint, however, relies exclusively on Ohio law. Appellants' arguments downplay (or outright ignore) the operative paragraphs of Hansbrough's complaint and fail to grapple with controlling Ohio Supreme Court authority concerning the scope of behavior constituting actionable sexual harassment.  In addition, appellants do not acknowledge that our review is confined to Hansbrough's *complaint* and that Ohio is still a notice-pleading state.  In arguing that Hansbrough's complaint fails to sufficiently allege a sexual-harassment dispute, appellants rely almost exclusively on cases in which sexual-harassment claims were rejected on fully developed records, e.g., on summary judgment or even after bench or jury trials.

### 3. Ohio Sexual Harassment Jurisprudence and Notice Pleading

{¶ 35} In *Hampel v. Food Ingredients Specialties*, 2000-Ohio-128, the Ohio Supreme Court held — in syllabus, no less — that "[h]arassing conduct that is simply abusive, with no sexual element, can support a claim for hostile-environment sexual

harassment if it is directed at the plaintiff because of his or her sex." *Id*. at paragraph four of the syllabus. Even apart from the sexually tinged remarks detailed above (e.g., that Hansbrough must have enjoyed the alleged same-sex harassment by Wargo), Hansbrough's complaint further alleges that after the effective date of the EFAA, Jenny engaged in abusive conduct based on his sex. Under *Hampel*, such abusive conduct, even "with no sexual element," can support a hostile-environment sexual-harassment claim. *Id*.

{¶ 36} In a recent case with similarities to this one, but cited by neither party, the First District relied on *Hampel* in reversing a trial court's order granting an employer's motion to compel arbitration. *Horne v. GE Aviation Sys. LLC*, 2024-Ohio-3171 (1st Dist.), *discretionary appeal not allowed*, 2024-Ohio-5529. In that case, as here, the plaintiff had entered into an arbitration agreement at the commencement of her employment. *Id*. at ¶ 3-5. Following her termination, she filed an administrative charge and then a complaint in common pleas court under R.C. Ch. 4112. GE moved to stay the case and compel arbitration. Horne opposed the motion, arguing that the Franken Amendment, Executive Order 13673, and the EFAA precluded arbitration of her case. The trial court granted GE's motion to compel, and Horne appealed.

{¶ 37} The First District resolved the case under the Franken Amendment, never reaching whether arbitration was barred by the cited executive order or by the EFAA. Its analysis, however, is highly instructive because of the parallels between

the Franken Amendment (codified at 48 C.F.R. 222.7402) and the EFAA. As summarized by the First District:

> Essentially, the Franken Amendment provides that a defense contractor receiving a government contract in excess of one million dollars cannot enter into an agreement with its employees that requires an employee to resolve certain claims through arbitration, including tort claims that are related to or arise out of sexual assault or harassment.

*Horne* at ¶ 15.[4]

{¶ 38} The parties disputed whether Horne's "claim arises out of and relates to sexual harassment[.]" *Id.* at ¶ 16. GE contended that Horne's complaint actually pled claims of gender discrimination, not sexual harassment. It relied on language in the complaint alleging that Horne was "treated . . . less favorably" than certain male employees.

{¶ 39} The First District, rejecting GE's argument, quoted *Hampel* extensively. While the excerpted language repeats (in part) the relevant portion of the *Hampel* syllabus quoted above, this passage from *Hampel* is worth quoting in its entirety:

> "Harassment 'because of * * * sex' is the *sine qua non* for any sexual harassment case. 'But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex.' *Oncale* [*v. Sundowner Offshore Servs.*], 523 U.S. [75, 80 [(1998)]. As Professor Larson points out, the term 'sexual,' as used to modify harassment, 'can refer both to sex as the immutable gender characteristic and to sex as describing a range of behaviors associated with libidinal gratification.' 3 Larson, Employment Discrimination

---

[4] The *Horne* Court, citing Eighth District authority, noted that a claim for violation of R.C. 4112.02 is a tort action. *Id.* at ¶ 25, citing *Ridley v. Fed. Express*, 2004-Ohio-2543, ¶ 89 (8th Dist.).

(2 Ed.2000) 46-34, Section 46.03[4]. Thus, actions that are simply abusive, with no sexual element, can support a claim for sexual harassment if they are directed at an employee because of his or her sex. Simply put, 'harassment alleged to be because of sex need not be explicitly sexual in nature.' *Carter v. Chrysler Corp.* (C.A.8, 1999), 173 F.3d 693, 701."

(Emphasis in original.) *Horne*, 2024-Ohio-3171, at ¶ 21 (1st Dist.), quoting *Hampel*, 2000-Ohio-128, at ¶ 29. The *Horne* Court therefore concluded that "*Hampel* clearly states that sexual harassment can occur when the harassment is directed at an employee because of her sex, and does not require comments and behavior to be explicitly sexual in nature." *Horne* at ¶ 22. It found that "Horne's complaint contains allegations that she was treated differently and subject to certain conditions because of her sex, which, under *Hampel*, is sexual harassment." *Id.*

{¶ 40} The First District explicitly rejected GE's argument that Horne's complaint had merely pled a claim for disparate-treatment sex discrimination rather than sexual harassment. The First District noted that under *Hampel*, "discrimination under R.C. 4112.02 may be established by proving either of two specified types of harassment: quid pro quo or hostile work environment." *Id.* at ¶ 24, citing *Hampel* at ¶ 24. It continued:

> *Hampel* relied on the creation of a hostile work environment to prove his claim. [*Hampel*] at 178. And while GE argues that Horne has only asserted that she suffered an adverse employment action (which the *Hampel* court would classify as quid pro quo harassment), we do not read Horne's complaint so narrowly. *In our view, Horne has alleged both types of harassment in her complaint. The complaint alleged that her supervisor's disparate treatment created a hostile work environment, and that she suffered adverse employment actions, including termination. The complaint contained multiple examples of the hostile work environment that Horne allegedly experienced. This*

*included being subjected to both verbal and written abuse from her supervisor and being prohibited from asking questions of a coworker regarding the development of a new application, while male coworkers were not subjected to such abuse or prohibited from asking such questions.*

(Emphasis added.) *Horne* at ¶ 24.

{¶ 41} GE's arguments mirror appellants' arguments in the present case, in which they contend that Jenny's alleged harassment of Hansbrough was, if not merely personal animosity, more akin to discrimination and retaliation than sexual harassment. Hansbrough's allegations, however, mirror Horne's. He contends not only that he was subjected to sexual harassment by Jenny in the form of unwelcome comments of a sexual nature, but also that he was singled out for abusive treatment because of his sex: In addition to the allegations of sexually charged harassment detailed above against Jenny (e.g., Count I), Hansbrough alleged in Count IV that even after March 10, 2022 (i.e., after the effective date of the EFAA), he was treated "differently as a male versus if a female" and that "Jenny repeatedly belittled, disparaged, and otherwise mistreated" him "with the belief that it would be tolerated or otherwise not dealt with on the basis than Hansbrough is a male." (Complaint at ¶ 188-190.)

{¶ 42} In *Horne*, 2024-Ohio-3171 (1st Dist.), the First District reversed the trial court's order compelling arbitration. It held that Horne's complaint involved a sexual-harassment dispute covered by the Franken Amendment and was, therefore, not subject to arbitration. *Id*. at ¶ 25, 34. While the present case does not involve the Franken Amendment, the central issue is the same: whether Hansbrough's

complaint involved a sexual-harassment dispute. As discussed above, we are not charged with reviewing the trial court's denial of appellants' Civ.R. 12(B)(6) motion. We do, however, review the complaint under the same notice-pleading standard for EFAA purposes, and we find that the complaint set forth cognizable claims of sexual harassment occurring after the effective date of the EFAA.

{¶ 43} This is not a close call. Ohio remains a notice-pleading state. This court has rejected "the heightened pleading standard established for federal courts in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)[.]" *Shaut v. Roberts*, 2022-Ohio-817, ¶ 6 (8th Dist.). Instead, this court adheres to "the notice pleading standard under Civ.R. 8." *Id.* As this court explained in *Shaut*:

> Under the heightened, federal standard, a plaintiff must demonstrate the plausibility of the allegations, well beyond the notice pleading standard under Ohio law of setting forth cognizable claims. . . . This court has altogether rejected the invitation to adopt the federal approach in *Tuleta v. Med. Mut. of Ohio*, 2014-Ohio-396, 6 N.E.3d 106, ¶ 31 (8th Dist.). And . . . the Ohio Supreme Court has not adopted the federal standard for Ohio either. *Maternal Grandmother, ADMR v. Hamilton Cty. Dept. of Job & Family Servs.*, Slip Opinion No. 2021-Ohio-4096, ¶ 28 (DeWine, J., concurring).

*Id. See also Smiley v. Cleveland*, 2016-Ohio-7711, ¶ 5 (8th Dist.) ("It is important to note that Ohio has not adopted the heightened federal pleading standard outlined in [*Twombly* and *Iqbal*], which requires a plaintiff to plead sufficient facts that state a 'plausible' claim for relief."); *Hendrickson v. Haven Place, Inc.*, 2014-Ohio-3726, ¶ 8 (8th Dist.) (In *Tuleta*, "this court reviewed and then rejected federal case law,

which heightened the notice pleading standard of Fed.R.Civ.P. 8(a), finding that Ohio has not adopted the modification of notice pleading standards as set forth in" *Twombly* and *Iqbal*.).

{¶ 44} Instead, in testing the sufficiency of a complaint under Ohio's notice-pleading standard, we look to whether a plaintiff "can show 'no set of facts' that entitle her [or him] to relief." *Smiley* at ¶ 5, citing *Tuleta* at ¶ 31. Accordingly, "'we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party.'" *Doe v. Cuyahoga Cty. Community College*, 2024-Ohio-3113, ¶ 20 (8th Dist.), quoting *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). As the Ohio Supreme Court has written:

> [A] plaintiff is not required to prove his or her case at the pleading stage. Very often, the evidence necessary for a plaintiff to prevail is not obtained until the plaintiff is able to discover materials in the defendant's possession. If the plaintiff were required to prove his or her case in the complaint, many valid claims would be dismissed because of the plaintiff's lack of access to relevant evidence. Consequently, as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.

*York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991). *See also LeRoy v. Allen, Yurasek & Merklin*, 2007-Ohio-3608, ¶ 14 (To affirm dismissal of complaint for failure to state a claim, "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.").

{¶ 45} We have already catalogued the factual contentions in Hansbrough's complaint alleging that after the effective date of the EFAA, he was subjected to sexual harassment in the form of harassing comments and harassing behavior based

on his sex. Pursuant to *Hampel*, 2000-Ohio-128, as well as *Horne*, 2024-Ohio-3171 (1st Dist.), Hansbrough has sufficiently pled facts that, if true — and drawing all inferences therefrom in the light most favorable to Hansbrough — would constitute sexual harassment under Ohio law. Nothing more is required.

{¶ 46} In arguing that Hansbrough has not adequately supported a sexual-harassment claim, appellants inexplicably cite multiple cases involving the rejection of sexual-harassment claims on fully developed records. Most of these cases were decided on summary judgment after thorough discovery. *See Pickett v. Steve's Doghouse, Inc.*, 2025-Ohio-2368 (8th Dist.); *Chisholm v. St. Marys City School Dist. Bd. of Edn.*, 947 F.3d 342 (6th Cir. 2020); *Pahssen v. Merrill Community School Dist.*, 668 F.3d 356 (6th Cir. 2012); *Eisenbaum v. Senior Lifestyle Corp.*, 560 Fed.Appx. 496 (6th Cir. 2014); *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784 (6th Cir. 2000); *Allen v. Ohio Dept. of Job & Family Servs.*, 697 F.Supp.2d 854 (S.D.Ohio 2010); *Burnett v. Tyco Corp.*, 203 F.3d 980 (6th Cir. 2000); *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 Fed.Appx. 624 (6th Cir. 2013); *Cecil v. Louisville Water Co.*, 301 Fed.Appx. 490 (6th Cir. 2008); *Thibodeaux v. B E & K Constr. Co.*, 2005-Ohio-66 (4th Dist.).[5] One case appellants cite involved a verdict after a bench

---

[5] In summarizing *Thibodeaux*, appellants misstate the procedural posture of this case and the scope of appropriate inquiry. They argue that "[i]f the harrowing experience of Ms. Thibodeaux was insufficient to state a claim, then surely Mr. Hansbrough's constructive discharge claims (in Counts I & IV of the Complaint) similarly fail to demonstrate a sexual assault dispute or sexual harassment dispute as required by the EFAA." (Appellants' brief at p. 24.) First, *Thibodeaux* was a summary-judgment case. It did not involve the failure "to state a claim" in a complaint. Second, appellants' attempt to focus on the constructive discharge aspect of Counts I and IV is little more than misdirection. We view the complaint as a whole.

trial. *Barnett v. Dept. of Veterans Affairs*, 153 F.3d 338 (6th Cir. 1998). Another of appellants' cases turned on a district court's reversal of a jury verdict. *Black v. Zaring Homes*, 104 F.3d 822 (6th Cir. 1997). In yet another case cited by appellants, the matter was tried before a jury, which deadlocked, and the federal district court declared a mistrial and entered judgment as a matter of law for the defendants. *Rayford v. Illinois Cent. RR.*, 489 Fed.Appx. 1 (6th Cir. 2012).

{¶ 47} To determine whether the EFAA applies, we review the complaint. None of appellants' cases remotely suggest that under Ohio's notice-pleading standard, Hansbrough's complaint failed to adequately allege sexual harassment within the relevant time frame. We decline to view this matter through thfe lens of cases that involved fully developed factual records rather than a review of the underlying complaint.[6] Upon our independent de novo review of the complaint under Ohio's notice-pleading standard, we find that Hansbrough has alleged facts occurring after the effective date of the EFAA that, if true, would support a claim of sexual harassment under Ohio law. Hansbrough has therefore sufficiently pled a sexual-harassment dispute covered by the EFAA.

---

[6] Appellants did cite a case in which the Sixth Circuit affirmed a district court's grant of a motion to dismiss, but the district court and Sixth Circuit expressly invoked the heightened "plausibility" federal pleading standard, which we have already noted does not apply in Ohio's state courts. *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833 (6th Cir. 2024). We further note that while *Ogbonna-McGruder* remains controlling law for federal district courts, it has recently been persuasively distinguished and in some respects criticized. *See Varney v. Health Carousel, LLC*, 2025 U.S. Dist. LEXIS 175632, *11 (S.D.Ohio Sept. 9, 2025); *Bryant v. Cincinnati Fire Dept.*, 2025 U.S. Dist. LEXIS 50344, *15, fn. 15 (S.D.Ohio Mar. 19, 2025).

{¶ 48} Having survived Civ.R. 12(B)(6) analysis, Hansbrough's sexual-harassment claims are by definition nonfrivolous. We therefore need not decide whether that more liberal standard of review should be applied to potential application of the EFAA. *See, e.g., Diaz-Roa*, 757 F.Supp.3d at 533-534 (S.D.N.Y. 2024). Furthermore, because we have found that Hansbrough sufficiently alleged specific acts of sexual harassment after the effective date of the EFAA, we need not address arguments that post-EFAA retaliation based on pre-EFAA sexual harassment were sufficiently related to allow him to invoke the EFAA. *See, e.g., Olivieri*, 112 F.4th at 92 (2d Cir. 2024) ("[R]etaliation resulting from a report of sexual harassment is 'relat[ed] to conduct that is alleged to constitute sexual harassment'" under the EFAA.); *Clay v. FGO Logistics, Inc.*, 751 F.Supp.3d 3, 17-18 (D.Conn. 2024); *Molchanoff v. SOLV Energy, LLC*, 2024 U.S. Dist. LEXIS 36400, *3-4 (S.D.Cal. Mar. 1, 2024).

### 4. The EFAA's Application to Hansbrough's Entire Case

{¶ 49} The final question under appellants' assignment of error is whether Hansbrough may invoke the EFAA to block arbitration of only his sexual-harassment claims within the relevant time period or whether earlier acts (i.e., the Wargo incidents) and claims distinct from sexual harassment (e.g., retaliation) remain arbitrable. In that regard, the weight of authority states that if a plaintiff properly invokes the EFAA, an arbitration agreement is unenforceable as to a plaintiff's entire "case," not merely a plaintiff's "claims" of sexual assault or sexual harassment. *See Mera*, 2025 U.S. Dist. LEXIS 225349, at *19 (S.D.N.Y. Nov. 14,

2025); *Williams v. Mastronardi Produce, Ltd.*, 2024 U.S. Dist. LEXIS 150550, *18 (E.D.Mich. Aug. 22, 2024) (noting that "the majority of the district courts that have addressed the issue" have ruled that "the EFAA precludes arbitration of [the] whole case"); *Bruce v. Adams & Reese, LLP*, 2025 U.S. Dist. LEXIS 33532, *14 (M.D.Tenn. Feb. 25, 2025) (same); *Sheehan v. Everstory Partners*, 2025 U.S. Dist. LEXIS 181911, *11 (E.D.Pa. Sept. 17, 2025); *Molchanoff* at *5. Not only have we reviewed these cases and find reliance on the distinction between "case" and "claims" persuasive, but appellants have cited no authority to the contrary.

## C. Waiver

{¶ 50} At the trial-court level, Hansbrough argued that appellants had waived their right to seek an order compelling arbitration by filing a Civ.R. 12(B)(6) motion to dismiss. While the trial court ultimately ruled in Hansbrough's favor based on the EFAA, it rejected his waiver argument. Hansbrough did not file a cross-appeal, but he again raises waiver as an alternative basis for affirming the trial court's judgment denying appellants' motion to compel arbitration. Hansbrough's waiver argument possibly falls within the scope of App.R. 3(C)(2), although this is not a case where the "alternative grounds . . . were either ignored or overlooked by the trial court." *Murray v. State*, 2002-Ohio-664, ¶ 21, fn. 2 (8th Dist.), citing *Kaplysh v. Takieddine,* 35 Ohio St.3d 170, 175 (1988). Hansbrough's waiver argument, however, is rendered moot by our resolution of appellants' sole assignment of error. Accordingly, pursuant to App.R. 12(A)(1)(c), we decline to address the issue of waiver.

**{¶ 51}** Judgment affirmed, and case remanded for further proceedings.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

MICHELLE J. SHEEHAN, A.J., and
SEAN C. GALLAGHER, J., CONCUR